# HENRY O. GILBERT *et al.*

*v.*

# JOSEPH B. HOLMES.

1. CHAMPERTY—*contract falling within definition of.* Where a party, having an equitable claim to lands, had abandoned the same for a period of six years, and left the State, declaring that he would have nothing more to do with them; and the complainant, who was not a relative of such party, and was not an attorney whom the party had sought to aid him in the enforcement of his claim, sought such party and procured a power of attorney and bond from him, whereby he might prosecute his rights, and, if successful, was to receive one-half of what he might recover, and he was to pay attorney's fees and all the costs, in case he was unsuccessful, but if successful, the principal was to pay half the costs, but no attorney's fees: *Held,* that this arrangement fell within the very definition of champerty, the most odious species of maintenance.

2. SAME—*equity will not enforce champertous contracts.* Champerty being *malum in se,* and an offense at common law, it seems clear, upon principle, that a court of equity will not enforce a contract which is champertous, or a security given to pay for services to be rendered under an undertaking which is an offense at common law, or grows out of a champertous contract.

3. CHANCERY—*equity will not enforce rights not founded upon any valuable consideration as against persons purchasing for value.* The principle is well settled that an executory agreement, or an imperfect conveyance upon a mere voluntary consideration, will not be enforced or aided in a court of equity.

4. It would seem clear, upon principle, that an undertaking to carry into effect a bargain which was *malum in se,* and an offense at common law, can not be regarded by a court of equity as constituting a valuable consideration.

5. SAME—*enforcement of security for the performance of contract against the policy of the law.* Where an original bargain is contrary to the policy of the law, a deed, in the nature of a mortgage to secure its performance, being but an incident to the former, will not be enforced in a court of equity.

6. In this case, A made a deed, absolute in form, to B and C, for certain lands, which was intended as a security only, and, in equity, was but a mortgage, After he had abandoned all claim under the same, and left the State, D, the complainant, procured from him a power of attorney to redeem or sue for the lands, taking an agreement from A to give the latter

one-half of what he might recover, and in case of success, to pay half the costs, but no attorney's fees, and if unsuccessful, D was to pay all the costs. D brought suit in A's name to redeem, and his bill was dismissed, and no appeal was taken or writ of error prosecuted until after E had acquired the title of B and C, for a valuable consideration. D then procured from A a deed, in the nature of a mortgage, upon the same lands, conditioned that if A should convey to D one-half of the lands the latter might recover under the prior agreement, the same should be void, and procured a reversal of the decree of dismissal in the former suit; and, while the same was pending, B procured a deed for the lands of D, and an agreement to dismiss his suit then being prosecuted by his attorney. D, after the dismissal of this suit, filed his bill in equity against A and the other parties in interest, to foreclose his mortgage, and for redemption from the prior mortgage to B and C: *Held,* that D occupied the position of a mere volunteer, and, as there was no consideration for the second mortgage, he could not override the equities of E, the purchaser, and that there were no merits in his bill.

7. MORTGAGE—*what is not a breach of a peculiar condition.* Where A, having a supposed claim to lands, gave B a power of attorney to prosecute the same, and a bond, conditioned that he would give B one-half of the lands, rents, issues and profits he might recover, and B brought suit for the redemption of the lands, in A's name, which was dismissed by the circuit court, on the merits; and A thereupon gave B a mortgage upon the lands, conditioned that he would comply with the conditions of his bond, and B procured a reversal of the decree of dismissal, on writ of error, and, before the cause was again heard, A conveyed to one of the parties to the suit, and agreed to dismiss the same, which was done: *Held,* on bill by B to foreclose his mortgage, and for redemption from the prior one, that there was no breach of the condition of the last mortgage, B not having at that time made any redemption or recovered any of the lands; and that, as the power of attorney was not coupled with an interest in the lands, and neither it, the bond nor mortgage, contained any stipulation against a revocation, A had the right to revoke the same at any time before B had recovered, and that such revocation was no breach of the condition.

8. POWER—*when revocable.* Where a letter or power of attorney is not given to secure the payment of money, or made irrevocable by its terms or agreement accompanying it, and it is not a power accompanied with an interest, as where by it and the agreement accompanying it the attorney is simply to have an interest in the proceeds arising from the execution of the power, the same is revocable.

9. So, where A gave B a power of attorney to prosecute suit for the redemption and recovery of lands, accompanied with an agreement to give the latter one-half of what he might recover, and secured the performance

of the agreement on his part, by mortgage on the lands sought to be recovered, but there was nothing in any of the writings obligating the attorney to act: *Held*, that, by the mortgage, the power was not annexed to the estate, nor was the estate auxiliary to its exercise, and the power was not coupled with an interest in the lands, and was revocable at any time before the attorney had recovered the lands, or some portion thereof.

10. A power coupled with an interest must create an interest in the thing itself upon which the power is to operate. The power and estate must be united, or be co-existent; and this class of powers survive the principal, and may be executed *in the name* of the attorney.

11. SAME—*what is a revocation.* As the power of constituting an agent is founded upon the right of the principal to do the business himself, it follows that when that right ceases, the right of creating an appointment, or continuing an appointment already made, must cease also. So, where the principal has parted with his right in the subject matter of the agency before the attorney in fact had exercised the power, it will be a revocation in law of the power conferred.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. SILAS L. BRYAN, Judge, presiding.

Mr. H. K. S. O'MELVENY and Mr. W. B. GILBERT, for the plaintiffs in error.

Mr. THOMAS G. ALLEN, for the defendant in error.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was a bill by Holmes, the defendant in error, brought in the circuit court of Randolph county, against plaintiffs in error, in effect for the foreclosure of an instrument in the nature of a mortgage, on the ground of condition broken and forfeiture of estate, and to redeem from what was alleged to have been a senior mortgage. The instrument in the nature of a mortgage, which is the foundation of the suit, was executed January 4, 1864, by one John Preschbaker, in the State of California, where he then resided, and upon the lands in question, situate in Randolph county, and was given not to secure

a debt, but the performance of a covenant, and under the following circumstances, appearing in this record:

March 27, 1850, Preschbaker, being the owner of the lands, and residing in said Randolph county, gave an absolute deed of them to Feaman & Gilbert, who took immediate possession. The latter, at the same time, executed to Preschbaker their bond, conditioned for the conveyance of the premises back to him, by warranty deed, upon his paying to them, within two years, without interest, the sum of $3000. The deed and bond were filed for record on the day of their execution. Preschbaker paid no part of that sum, and, as the evidence clearly shows, abandoned the transaction, and, before the two years expired, went to California to reside. After the time expired, and while living in the latter State, he declared that these lands had ruined him once, and he would have nothing more to do with them.

It, nevertheless, appears that, afterwards, Holmes obtained from Preschbaker, in California, May 4, 1858, a letter of attorney, which, in substance and effect, authorized and empowered Holmes to redeem said lands, or any part thereof, for Preschbaker and in his name, and for him and in his name to institute and carry on any suit or suits, in law or equity, for the recovery to Preschbaker of said lands; also, the rents, issues and profits thereof. Preschbaker, at the same time, executed to Holmes an instrument in the nature of a bond, under his hand and seal, whereby he bound himself, in the penalty of $5000, to Holmes; and, referring to said letter of attorney, he covenanted to convey to Holmes, in fee simple, one-half of all the lands which the latter might redeem or recover to him, Preschbaker, by virtue of that letter of attorney, and, also, in case Holmes was successful, to pay one-half of the court costs, but no lawyer's fees.

Holmes put neither of these instruments upon record, but keeping his relation to the subject matter concealed, and not being himself an attorney at law, about the 7th of July, 1858, employed a solicitor, and, in Preschbaker's name, began a suit

in chancery, in said circuit court, against Feaman & Gilbert, to have said absolute deed declared a mortgage, and to be permitted to redeem. To this bill, answers were filed, on which issue was joined; and, at the October term, 1859, of said court, said bill was dismissed. On that trial, Holmes was a witness, and testified that Preschbaker had not transferred to him, Holmes, any supposed interest which he, Preschbaker, had in said bond from Feaman & Gilbert; that decree of dismissal was rendered upon the merits. No appeal was prayed from it, nor writ of error from the Supreme Court brought to it; when, afterwards, August 10, 1861, William M. Morrison and Evelyn H., his wife, purchased these lands of Gilbert, who had become the owner of Feaman's interest, for the consideration of $8000, $2000 of which they paid in cash, taking Gilbert's warranty deed to the wife, and she and her husband executing their promissory notes to Gilbert for the balance, payable at specified times in the future, and a mortgage on the premises to secure these notes. This deed was filed for record December 9, 1861, and the purchasers took immediate possession, upon its execution. These purchasers had no notice at the time of their purchase, except the mere constructive notice arising from the recording of the deed from Preschbaker to Feaman & Gilbert, and their bond back to him, giving him the option of obtaining a reconveyance upon the payment of $3000, without interest, within two years.

Holmes, meanwhile keeping silent as to his letter of attorney and agreement from Preschbaker, and, also, as to any intention to sue out a writ of error to said decree, which remained in full force at the time of Morrison's purchase; afterwards, and September 3, 1863, prosecuted a writ of error to that decree out of the Supreme Court, wherein, at the next November term, the decree of the circuit court was reversed, on the ground, in substance, that the latter court came to an erroneous conclusion upon the evidence, and that, by it, it was satisfactorily made to appear that the absolute deed from

Preschbaker to Feaman & Gilbert was intended by the parties as a security, and was, therefore, to be regarded as a mortgage, and the cause was remanded.

Nothing having been done in said cause in the circuit court after it was remanded, Holmes, January 4, 1864, obtained from Preschbaker, in California, the instrument in question in the nature of a mortgage. It is not pretended that Holmes gave Preschbaker any valuable consideration for that deed, or that he assumed any responsibilities at that time. The consideration recited is that "of services performed, money expended, and services to be performed, in conformity with the provisions contained in a certain power of attorney executed by him, Preschbaker, on the 4th day of May, 1858, whereby Joseph B. Holmes, of, etc., was empowered to do and perform certain acts in regard to certain lands." This conveyance covered the lands in question, in the usual form as in a mortgage; then, after the *habendum* clause, was the following condition: "Subject, however, to the following conditions, to wit: For that, whereas, I, John Preschbaker, did make and execute a certain sealed instrument, in writing, dated the 4th day of May, A. D. 1858, whereby I did agree and bind myself, my heirs and assigns, in the penalty of $5000, in consideration of the undertaking and services of said Joseph B. Holmes, to convey to said Holmes, his heirs and assigns, by valid fee simple deed, one-half of all the aforesaid lands which *may be redeemed or recovered to me;* and, also, one-half of all the rents, issues and profits thereof, which should be recovered by said Holmes, by virtue of the aforesaid power of attorney; also, to pay one-half of all the court costs, but no lawyer's fees, incurred by said Holmes in the recovery *to me* of said lands, rents, issues and profits. Now, therefore, if I, my heirs, executors or assigns, shall well and truly keep and perform said agreement made and executed by me as aforesaid, *when* said lands, rents, issues and profits *shall be recovered* according to the provisions and intentions of said power

of attorney, then the foregoing deed of conveyance shall become void; otherwise, to remain in full force and effect."

This instrument was put upon record March 24, 1864.

Afterwards, September 14, 1864, Preschbaker, for the consideration of $2500 paid him by said Gilbert, executed to the latter a quit-claim deed of the premises, thereby relinquishing his equity of redemption and all claim to rents, issues or profits, and at the same time, as part of the transaction, also gave Gilbert a stipulation, authorizing him to dismiss said suit in equity pending in Preschbaker's name in the Randolph circuit court, Gilbert paying all the costs.

The suit was dismissed in pursuance of the stipulation, and Holmes filed this bill in his own name, based upon said instrument in the nature of a mortgage, and upon the theory that it was paramount to the interests of either Gilbert or the Morrisons in the lands, and that if the condition was broken, the estate forfeited to him, and he was, therefore, entitled to a foreclosure, and to redeem from what was claimed to have been intended as a mortgage, by the absolute conveyance from Preschbaker to Feaman & Gilbert, notwithstanding Preschbaker's quit-claim deed to Gilbert, executed September 14, 1864.

The court below decreed that, upon Holmes paying into court the sum of $1500, the Morrisons and Gilbert should convey to him, Holmes, an undivided half of all of said lands, and the defendants bring the record to this court by writ of error.

There is nothing in the position of Holmes, in this case, to entitle him to the favorable consideration of a court of equity as against the Morrisons and Gilbert, purchasers for a valuable consideration. Look at the foundation of his claim. Here was Preschbaker, who was supposed to have certain rights in respect to the land in question, but which he was unwilling to enforce. He had gone away from them, to reside in a distant State. He had declared he would have nothing more to do with them, thus deciding to abandon whatever rights he

might have, and continued in that attitude towards them for upwards of six years, when Holmes intermeddles and obtains the letter of attorney, authorizing him to bring suits for their recovery, in Preschbaker's name, and an agreement from the latter to convey to him one-half of what he might so recover. Holmes paid nothing for these instruments; and, so far as the evidence shows, he did not, in fact, bind himself to do anything under the letter of attorney. But if he did, what was the nature of the undertaking? He was not an attorney whom Preschbaker sought to aid him in the enforcement of his rights, nor was he in any way related to Preschbaker, but was a mere officious intermeddler, proposing to furnish the means to carry on litigation, in the name of his principal, to enforce rights which the latter was not disposed to enforce, in consideration of receiving half of the lands or rents and profits so to be recóvered. This falls within the very definition of champerty, the most odious species of maintenance. 2 Story Eq. Jur. secs. 1048–1049.

Such, and such only, is the consideration for the letter of attorney, and agreement forming the basis of his claim, which we are able to spell out of that transaction; and it was to secure the performance of that agreement, on the part of Preschbaker, that the instrument in the nature of a mortgage was given. Should a claim, based upon such a consideration, be held superior, although first in time, to those of a purchaser for valuable consideration? Or, in other words, will a court of equity lend its aid for its enforcement? Champerty is *malum in se,* or an offense at common law. 2 Pars. on Cont. 765–6; 2 Story's Eq. above cited; *Key* v. *Vattier,* 1 Ham. (Ohio), 132; *Slade* v. *Rhodes,* 2 Dev. and Bat. N. C. Eq. R. 24; *Thurston* v. *Perceval,* 1 Pick. 415.

In *McGoon* v. *Ankeny,* 11 Ill. 558, this court, by CATON, Justice, said: "The law will not tolerate a principle which will allow a man of litigious disposition to go about the community hunting up stale claims, or even meritorious ones, against his neighbors, either for the purpose of harrassing

them or for speculation." And in the recent case of *Norton* v. *Tuttle et al.* 60 Ill. 130, this court adopted the doctrine as laid down by Lord ABINGER, in *Prosser* v. *Edmunds*, 1 Younge & Coll. 481, with entire approbation : "All our cases of maintenance and champerty," he said, "are founded on the principle that no encouragement should be given to litigation by the introduction of parties to enforce those rights which others are not disposed to enforce. There are many cases where the acts charged may not amount precisely to maintenance or champerty, yet of which, upon general principles and by analogy to such acts, a court of equity will discourage the practice."

It would seem clear, upon principle, that an undertaking to carry into effect a bargain which was *malum in se,* and an offense at common law, could not be regarded by a court of equity as constituting a valuable consideration. While, therefore, the position of Holmes may be worse, it certainly is no better than that of a mere volunteer, seeking the enforcement of a voluntary agreement against persons whose adverse rights are based upon a purchase for valuable consideration.

The principle is well established in this country, as it is in England, that an executory agreement, or an imperfect conveyance upon a mere voluntary consideration, will not be enforced or aided in equity. 1 Lead. Cas. in Eq. 234, and cases there cited.

No new consideration for the instrument in the nature of a mortgage was attempted to be shown by the evidence, and that recited in the deed is purely fictitious. Under no circumstances was Preschbaker to pay any lawyer's fees, and he was to share in the payment of the court costs, only in case of success. The suit which had been instituted was unsuccessful, so he was liable to pay none of the costs.

Upon the reversal in the Supreme Court, the costs were cast upon Feaman & Gilbert, and therefore even Holmes was not liable for them. Nor was Holmes to have any pay for his services except in pursuance of the bargain *campum partire,* to

divide the lands and rents and profits sued for, between them, in case they prevailed in their suit, and *when* recovered.

Holmes was to indemnify Preschbaker against all costs, if he was unsuccessful; and if they were successful, in which case the costs would ordinarily be upon the opposite parties, then Preschbaker was to pay only one-half of the court costs incurred, but no lawyer's fees, so that, as will be seen upon a moment's reflection, Preschbaker, at the time of making the deed to secure the performance of said agreement on his part, was not legally liable to Holmes to the extent of a single farthing.

As before stated, the consideration recited was: "services performed, money expended and services to be performed, in conformity with the provisions contained in a certain power of attorney executed by him (P.) on the 4th day of May, 1858, whereby Joseph B. Holmes, etc., was empowered to do and perform certain acts in regard to certain lands." This connects the deed with the original bargain, which, in equity, must be regarded as the principal, and the conditional conveyance to secure its performance as an incident; and, if the former was against the policy of the law, the latter can not be enforced in equity.

As to this feature, the case stands thus: Holmes obtains, in May, 1858, of Preschbaker, who had abandoned his rights for upwards of six years, this letter of attorney and agreement, *campum partire*, which he kept entirely out of view, but commenced suit thereunder in Preschbaker's name, on the trial of which, he, as a witness, denied having obtained from Preschbaker any interest in the lands. When that suit was decided adversely to him, he took no appeal from the decree, and concealed his intention to sue out a writ of error.

After the decree, and before the writ of error, the Morrisons, having no notice of extrinsic facts respecting the conveyance made eleven years before to Feaman & Gilbert, purchased the property of the latter, who had become the grantee of Feaman's interest, paying in cash $2000, and giving their

negotiable notes for $5000 more, taking a warranty deed and entering into possession. Holmes afterwards, without any new consideration, obtains, January 6, 1864, of Preschbaker, the deed in the nature of a mortgage, and puts it upon record.

Holmes, having redeemed or recovered no part of the lands, and the mortgage containing no covenant against Preschbaker acting in his own behalf, or revoking the power given to Holmes, Gilbert, in September, 1864, purchased of Preschbaker, for the consideration of $2500 paid in cash, his equity of redemption.

These several purchases, made upon valuable consideration, and under the circumstances stated, Holmes, upon a claim arising out of a transaction not to be sanctioned by a court of equity, and standing as a mere volunteer, is seeking to override.

The bare statement of the case is sufficient to show the total absence of merits.

But there is still another view, which, if we are correct in regard to it, will show that, upon strict principles of law, there is no foundation for his suit.

It is an indispensable prerequisite to the right of Holmes to a foreclosure under his deed in the nature of a mortgage, as his counsel characterizes the instrument, that there should be a breach of condition, which would operate to work a forfeiture and make the estate absolute.

This proposition, we apprehend, can not be successfully controverted. Then, upon any fair construction of the terms contained in the condition, what would constitute such a breach?

The covenant, the performance of which that instrument was intended to secure, was, that Preschbaker would convey by valid deed to Holmes one-half of all of said lands, which Holmes might redeem or recover to Preschbaker by virtue of the power of attorney, *when* the same should be so redeemed or recovered.

Until Holmes exercised the power given by the letter of attorney, and by its exercise redeemed or recovered some

portion of the lands to Preschbaker, the latter was under no duty or obligation to convey to the former, for, until then, Holmes was entitled to no interest in the lands.

There is no ground for the pretense that Holmes, at the time he commenced suit for foreclosure, had redeemed or recovered any portion of the land by virtue of the power of attorney or otherwise.

There was no covenant or stipulation contained in any of the instruments given by Preschbaker to Holmes that the power should be irrevocable. If, therefore, there was nothing in its nature which would render it irrevocable, Preschbaker was at liberty to revoke it at his will and pleasure, and if so, the exercise of that right could not constitute a breach of the condition contained in the deed of January 6, 1864.

The letter of attorney was not given to secure money loaned, and was not, by its terms, irrevocable, or made so by the terms of either of the other writings. It was not a power coupled with an interest; because, by it, and the contemporaneous agreement, Holmes was simply to have an interest in the proceeds arising from the execution of the power.

The case of *Bonney* v. *Smith,* 17 Ill. 531, is a direct authority for holding the power, in the case at bar, to be revocable at the will of the principal. Nor was this quality changed by the deed of January 6, 1864. That was given merely to secure the performance by Preschbaker of the original bargain to convey one-half the lands which Holmes might redeem or recover, to the former, by virtue of the letter of attorney, leaving it to the volition of Holmes to act under the power, and of Preschbaker to continue it. By this writing no new terms were added to the original bargain; the power was not annexed to the estate, nor was the estate auxiliary to its exercise. It was not a power coupled with an interest before, and it remained the same after that deed was made.

It was originally a mere common law authority in Holmes to do certain acts for and in the name of his principal, and the deed, without superadding any new terms, is given solely with

reference to this pre-existing transaction, and to secure to Holmes the fruits arising from the exercise of the power, if he should choose to exercise it. The exercise of the power by him was an indispensable condition precedent to the estate ever becoming absolute in him.

With these several instruments before him, would any good lawyer contend that Holmes could exercise the power conferred by that letter of attorney in his own name, or that he had an interest which he could convey to a third person, and the assignee exercise the power in his own name? Yet all these consequences would follow, if Holmes had a power coupled with an interest, as that term is understood from the books. *Strother* v. *Law*, 54 Ill. 413.

"A power, *coupled with an interest,* must create an interest in the thing itself upon which the power is to operate. The power and estate must be united, or be co-existent, and this class of powers survive the principal, and may be executed *in the name* of the attorney." *Bonney* v. *Smith, supra,* and authorities there cited.

By the express terms of the condition, the lands must have been recovered *to* Preschbaker before he was under any obligation to convey any part to Holmes, and everything was to be done in Preschbaker's name.

What is there in the terms, or legal effect of these writings, between Preschbaker, the principal, and Holmes, the agent, to tie the hands of the principal so as to prevent him from parting with the subject matter of the agency?

Counsel for Holmes has failed to point out anything, and we can perceive nothing of the kind. That being the case, then, when Preschbaker, as principal, assumed to act in that behalf, and sold and conveyed his equity of redemption to Gilbert for a valuable consideration, thus parting with all his right in or control over the subject matter of the agency, this was such a termination of his own authority, as, by operation of law, terminated that of the agent also.

This doctrine is also forcibly stated by Story, in his work on Agency, sec. 481 : "A revocation, by operation of law, may be, by a change of condition, or of state, producing an incapacity of either party. This proceeds upon a general rule of law, that the derivative authority expires with the original authority from which it proceeds. The power of constituting an agent is founded upon the right of the principal to do the business himself; and when that right ceases, the right of creating an appointment, or *continuing* the appointment of an agent already made, for the same purpose, must cease also. In short, the derivative authority can not, generally,· mount higher, or *exist longer*, than the original authority."

A summary of this view is, that the conveyance in the nature of a mortgage is the foundation of this suit, and it is virtually a suit to foreclose that mortgage and redeem from an alleged prior one ; that, in order to such forclosure, there must be a breach of the condition—a forfeiture of the estate to the mortgagee; that such a breach could only occur after the mortgagee had redeemed, or, by action in mortgagor's name, recovered the lands, or some portion thereof, to the mortgagor by virtue of the power of attorney ; that the power thereby given was not coupled with an interest, nor was the principal restrained, by anything in the writings, from doing the business himself, or disposing of the subject matter of the agency, or, in other words, from revoking the power; that, by the sale and conveyance of the lands, the subject matter of the agency, the principal terminated his own authority or control over it; that such exercise and termination of his own authority being but the exercise of a legal right in the principal, it gave a good title to Gilbert as against Holmes, the agent, and operated as a revocation of the derivative authority of the latter, so that there was no breach of the condition contained in the so-called mortgage, and consequently no forfeiture of the estate to Holmes.

We are, therefore, of opinion that the decree of the circuit court should be reversed and the bill dismissed.

*Decree reversed.*