[Filed November 17, 1891.]

## L. D. BROWN *v.* JOHN BIGNÉ ET AL.

CHAMPERTY — AGREEMENT BY LAYMAN.—A fair *bona fide* agreement by a layman to supply funds to carry on a pending suit in consideration of having a share of the property in controversy, if recovered, is not *per se* void, either on the grounds of champerty, as now understood, or of public policy; but courts will carefully scrutinize such contracts, and if they are found to be unconscionable or made in bad faith, they will not be enforced.

Multnomah county: L. B. STEARNS, Judge.

Defendants appeal. Affirmed.

This is a suit to specifically enforce a written contract entered into between plaintiff and defendant Bigné in

April, 1887. The facts are these: In April, 1881, one Pierre Manciét died in the city of Portland, largely indebted, but possessed of a large estate, consisting chiefly of real property, the legal title of which stood in his name, but of which Bingé claimed a one-half interest as a partner of Manciét.

By his will he appointed his widow and Bigné executors thereof. They undertook the management of the estate, but shortly thereafter the widow died, leaving Bigné sole executor. He continued to act as such executor for five or six years, but no attempt was made to adjust his alleged partnership interest until February, 1887, when he presented to the county court for allowance a claim against the estate for $27,373.02, for money alleged to have been overdrawn by Manciét, and also a claim to be the owner of an undivided one-half of all the property mentioned in the inventory, except certain furniture belonging to the widow. The Manciét heirs resisted this claim, contending that he was not and never had been a partner of their ancestor, and was not entitled to any interest whatever in the estate.

In this state of affairs, Bigné being heavily indebted and without means, except his interest in the partnership estate, sought the assistance of plaintiff to enable him to prosecute his claims, and if possible realize something from the partnership estate. After considerable negotiations, the contract in suit was finally entered into, whereby in consideration of the sum of six thousand dollars, to be advanced by plaintiff as might be required to carry on the litigation with the Manciét heirs, and establish Bigné's interest in the estate, Bigné sold, assigned and transferred to plaintiff an undivided one-half interest in and to all his right, title and estate in the property, real, personal or mixed, as fully and particularly set forth and described in the inventory of the estate, and also an undivided half of any claim he might be able to establish against the estate of Manciét. After this contract was made, Bingé's claim was vigorously

litigated, finally resulting in a decree of this court establishing his right as a partner to one-half of certain real estate in and near Portland, and his claim against the private estate of Manciét for $9,530.87 and against the partnership estate for $7,890.81. The individual and partnership estates then proceeded rapidly to a final settlement; and the real estate having appreciated largely in value, and exceeding greatly the partnership debts, Bigné sought to repudiate his agreement, and hence this suit. The defendants Bigné and Clossett, who are appellants here, claim as a defense that the agreement sued on is champertous and void. The decree of the court below being in favor of plaintiff, defendants appeal.

*James Gleason*, for Appellant.

*Thos. N. Strong*, for Respondent.

BEAN, J.—The only question in this case, is whether the contract between plaintiff and Bigné is champertous and void. The solution of this question depends upon how far the ancient doctrine of champerty and maintenance is to be recognized in this state.

It is conceded at the outset that the contract in suit was honestly and fairly made, and that Brown acted in entire good faith in the matter. No advantage was sought or taken of Bigné; he was fully informed as to the extent, amount, and value of the property claimed by him, and it was at his earnest solicitation that Brown made the contract. When he was without means or credit to prosecute his claims, and sore pressed by the Manciét heirs, who sought to exclude him from his share in the estate, he applied for aid in the struggle to Brown, who thereupon in good faith entered into the contract and advanced the money to enable him to prosecute his claim, upon no other security for its repayment than the assignment of a one-half interest in the property in litigation. Under these circumstances, the defense of Bigné may be considered anything but meritorious.

Under the ancient doctrine of champerty, the contract in suit is clearly void, for that offense was defined to be a bargain with a plaintiff or defendant to divide the land or other matter in suit between them, if they prevailed; whereupon the champertor was to carry on the suit at his own expense. (4 Bl. Com. 135.) Some of the authorities omit from their definition the statement that the champertor is to carry on the suit at his own expense, and confine it simply to an agreement to aid a suit, and then divide the thing recovered. (1 Hawk. P. C. c. 84, §1; Coke on Lit. 368b.)

The doctrine of champerty and maintenance, the gist of which is the same, differing only in the mode of compensation, arose from causes peculiar to the state of society in which it was established. The most potent reason for their suppression was an apprehension that justice itself would be endangered by these practices. The doctrine was established "to repress the practices of many who, when they thought they had title or right to any land, for the furtherance of their pretended right, conveyed their interest or some part thereof to great persons, and with their countenance did oppress the possessors. The power of great men, to whom rights of action were transferred in order to obtain support and favor in suits brought to assert these rights, the confederacies which were thus formed, and the oppression which followed from the influence of great men, in such cases, are themes of complaint in the early books of the English law." (Seywright v. Page, 1 Leon, 167.)

Blackstone speaks of these offenses as perverting the process of the law into an engine of oppression. (4 Blk. Com. 135.) So great was the evil of rich and powerful barons, buying up claims, and by means of their exalted and influential positions overawing the courts, and thus securing unjust and unmerited judgments and oppressing those against whom their anger was directed, that it became necessary in an early day in England to enact statutes to prevent such practices and to invoke in all its rigor the

doctrine against champerty and maintenance. The common law rule prohibiting the assignment of choses in action, and the sale and transfer of land held adversely, was a branch of this same doctrine and arose from the same causes.

Lord Coke says: "Nothing in action, entry or reëntry can be granted over, for so under color thereof pretended titles might be granted to great men whereby right might be trodden down and the weak oppressed." And BULLER, J., in *Masters* v. *Miller*, 4 Term R. 320, says: "It is laid down in our old books that for avoiding maintenance, a chose in action cannot be assigned." But he adds: "The good sense of that rule seems to me very questionable, and in early as well as modern times it has been so explained away that it remains at most only an objection to the form of the action." Under the circumstances above indicated, to allow rich and powerful persons to buy up claims, or to assist in the litigation with money to enable the plaintiff or defendant to prosecute or defend his cause of action or defense, was undoubtedly dangerous to the liberty of the subject, and sound public policy forbade it. With the advance of time came the change of circumstances, and in modern times, since England has enjoyed a pure and firm administration of justice, even in that country the rigor of the common law against champerty and maintenance has been very much softened; so that now not only the assignability of choses in action is generally recognized in that country, but it is said there is no rule of law which prohibits the purchase of the subject matter of a pending lawsuit although accompanied with an agreement to indemnify the vendor against costs and expenses. (*Knight* v. *Bowyer*, 2 DeGex. & J. 421.) Nor is a contract to support a pending litigation in consideration of having a stipulated part of the money or thing recovered *per se* void as against public policy. (*Coondoo* v. *Mookerjee*, L. R. 2 App. Cas. 186.)

In this country where no aristocracy or privileged class elevated above the mass of the people has ever existed, and

the administration of justice has been alike impartial to all
without regard to rank or station, the reason for the ancient doc-
trine of champerty and maintenance does not exist, and hence
has not found favor in the United States. (*Roberts* v. *Cooper*,
20 How. U. S. 467; *Thalheimer* v. *Brinckerhoff*, 3 Cow. 623; 15
Am. Dec. 309.) In some of the states the whole doctrine is
regarded as entirely obsolete. (*Mathewson* v. *Fitch*, 22 Cal. 86;
*Bentinck* v. *Franklin*, 38 Tex. 458.) But the doctrine in a
more or less modified form is generally recognized in a great
majority of the states of the union, and contracts which come
within the mischief to be guarded against in the administration
of justice are held to come within the rule. (*Lathrop* v. *Amherst
Bank*, 9 Met. 489; *Gilbert* v. *Holmes*, 64 Ill. 548; *Barker* v.
*Barker*, 14 Wis. 142; *Lafferty* v. *Jelley*, 22 Ind. 471; *Halloway*
v. *Lowe*, 7 Port. (Ala.) 488; *Weakly* v. *Hall*, 13 Ohio, 167; 42
Am. Dec. 194; *Backus* v. *Byron*, 4 Mich. 535; note to
*Thalheimer* v. *Brinckerhoff*, 15 Am. Dec. 319.)

To meet the changed condition of society and adminis-
tration of justice, the rule has been much modified, so that
upon modern construction the doctrine of champerty and
maintenance as regards a layman is confined to cases where
a man for the purpose of stirring up strife and litigation
encourages others, either to bring actions or to make de-
fenses which they have no right to make or otherwise
would not make; such interference is considered as having
a tendency to pervert the course of justice. (*Dorwin* v. *Smith*,
35 Vt. 69; *Findon* v. *Parker*, 11 M. & W. 675; *Stanley* v. *Jones*,
7 Bing. 369.) The gist of the offense consists in the officious
intermeddling in another suit, and contracts not within
the mischief to be guarded against should not be held to
come within the rule.

It may now be stated as a general rule that a man may
sell the whole or part of a thing in action as well as the
whole or part of a thing in possession. The right of dis-
position is involved in the very idea of property. With few
exceptions, not material here, whatever a man may own he
may sell; and whatever a man may lawfully sell, another

man may lawfully buy. And whenever a man has bought anything in the nature of property, he is entitled to all the remedies the law may afford to enable him to possess and enjoy it. It follows that there is now no rule of law which prohibits the purchase of anything otherwise capable of assignment merely because it may become the subject of a lawsuit. From this it logically follows that the purchase of a right, which is the subject matter of a pending lawsuit, by one standing in no fiduciary relation, is not unlawful, unless it be made for the mere purpose or desire of perpetuating strife and litigation; nor can it make any difference on principle or authority that the consideration for the purchase is to be used in conducting the litigation and paying the expenses thereof. A fair *bona fide* agreement by a layman to supply funds to carry on a pending suit in consideration of having a share in the property if recovered, it seems to us ought not to be regarded as *per se* void, either on the grounds of champerty as now understood or of public policy. Indeed, it may sometimes be in furtherance of justice and right that a suitor who has a just title to property and no means except the property itself, should be assisted in that way. The doctrine of champerty is directed against speculation in lawsuits and to repress the gambling propensity of buying up doubtful claims. It is not and never was intended to prevent persons from charging the subject matter of the suit in order to obtain the means of prosecuting it. (1 Addison on Cont. 392; *Statsenburg* v. *Marks,* 79 Ind. 193.)

But agreements of the kind above suggested should be carefully watched and closely scrutinized when called in question; and if found to have been made not with a *bona fide* object of assisting a claim believed to be just, but for the purpose of injuring and oppressing others by aiding in unrighteous suits, or for the purpose of gambling in litigation or to be so extortionate or unconscionable as to be inequitable against the party, effect ought not to be given to them. Courts administering justice according to the broad

principles of equity and good conscience, as they are bound to do, will consider whether the transaction is merely the *bona fide* acquisition of an interest in the subject of litigation or whether it is an unfair or illegitimate transaction, gotten up for the purpose merely of spoil or speculation. The doctrine of champerty to the extent that furnishing aid in a suit under an agreement to divide the thing recovered is *per se* void, we think ought not to prevail when such aid is furnished by a layman; but when such contracts are made for the purpose of stirring up strife and litigation, harrassing others, inducing suits to be begun which otherwise would not be commenced, or for speculation, they come within the analogy and principles of that doctrine, and should not be enforced. (*Gilbert* v. *Holmes*, 64 Ill. 548; *Propeller Mohawk*, 8 Wall. 153; *Boardman* v. *Thompson*, 25 Iowa, 487.)

Applying these principles to the case in hand, we find that the contract between plaintiff and defendant was entered into in entire good faith, and with no intention on the part of plaintiff of officiously intermeddling in the controversy between Bigné and the Manciét heirs, but only at Bigné's earnest solicitation to enable him to obtain means to prosecute his claim. The contract was not unconscionable or unjust but fairly entered into. Bigné had no means except the property in litigation; and the taking by plaintiff of an assignment of a one-half interest therein as a consideration for the money advanced by him, violated no principle of law or public policy so far as we can see from this record.

What was said by THAYER, J., in relation to the doctrine of champerty in *Dahms* v. *Sears*, 13 Or. 47, is in regard to contracts between attorney and client, and has no application here. The relation of attorney and client did not exist between Brown and Bigné, and this opinion is confined to the case before us.

The decree of the court below is therefore affirmed.