# W. M. ROHAN v. MRS. MARTHA JOHNSON.

### (L.R.A. —, —, 156 N. W. 936.)

**Layman — good-faith agreement by — to collect compromise or settle — promissory note — percentage compensation — champerty — public policy — validity.**

A good-faith agreement by a layman to collect, compromise, or settle a promissory note in consideration of a certain percentage of the amount collected or recovered, is not *per se* void on the ground of champerty or public policy.

Opinion filed February 23, 1916.

Appeal from the County Court of Cass County, *Hanson,* J.

From an order overruling a demurrer to the complaint, defendant appeals.

Affirmed.

*Pollock & Pollock,* for appellant.

Champerty is a species of maintenance, and is defined as being a bargain with a plaintiff or defendant *campum partire* to divide the land or other matter sued for between them if they succeeded, whereupon the champertor is to carry on suit for party at his own expense. 3 Bl. Com. 135; 1 Bouvier's Law Dict.

It consists of an agreement to prosecute or defend a suit, by personal services or the furnishing of funds, in which suit he has no personal interest, upon a corrupt agreement to divide the subject-matter. Abbott's Law Dict. title Champerty; Huber v. Johnson, 68 Minn. 74, 64 Am. St. Rep. 456, 70 N. W. 806; Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035; Woods v. Walsh, 7 N. D. 384, 75 N. W. 767; Comp. Laws 1913, § 9414; N. Y. Penal Code, §§ 136–141; Lyon v. Hussey, 82 Hun, 15, 31 N. Y. Supp. 281; Rev. Stat. (Wis.) 1858, § 62, chap. 165; Miller v. Larson, 19 Wis. 463; Barker v. Barker, 14 Wis. 132; Underwood v. Riley, 19 Wis. 412.

Public policy and the higher ethical standard of the profession of law do not permit the enforcement of such an agreement. · Huber v.

NOTE.—On champertous contracts of laymen, see note in 14 L.R.A. 745. As to validity of champertous contract generally, see note in 12 L.R.A.(N.S.) 606.

Johnson, 68 Minn. 74, 64 Am. St. Rep. 456, 70 N. W. 806; Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035; Hamilton v. Gray, 67 Vt. 233, 31 Atl. 315; Byrd v. Odem, 9 Ala. 755; Wheeler v. Pounds, 24 Ala. 472; Coquillard v. Bearss, 21 Ind. 479, 83 Am. Dec. 362; Swanston v. Morning Star Min. Co. 13 Fed. 215; Lathrop v. Amherst Bank, 9 Met. 489; Williams v. Fowle, 132 Mass. 385; Belding v. Smythe, 138 Mass. 530; Lancy v. Havender, 146 Mass. 615, 16 N. E. 464; Thurston v. Percival, 1 Pick. 415; Weakly v. Hall, 13 Ohio, 167, 42 Am. Dec. 194; Phelps v. Manecke, 119 Mo. App. 139, 96 S. W. 221; Re Evans, 22 Utah, 366, 53 L.R.A. 952, 83 Am. St. Rep. 794, 62 Pac. 913; 6 Cyc. Champerty, 864.

A complaint alleging a contract void for champerty is bad on demurrer. Coquillard v. Bearss, 21 Ind. 479, 83 Am. Dec. 362; Lyon v. Hussey, 82 Hun, 15, 31 N. Y. Supp. 281; Huber v. Johnson, 68 Minn. 74, 64 Am. St. Rep. 456, 70 N. W. 806.

*Lawrence & Murphy,* for respondent.

Champerty is the officious interference in a suit, not in any way belonging to anyone, by maintaining or assisting either party with money or otherwise to prosecute or defend. But these harsh terms have been greatly modified and softened in all jurisdictions. Manning v. Sprague, 148 Mass. 18, 1 L.R.A. 516, 12 Am. St. Rep. 508, 18 N. E. 673; Gilman v. Jones, 87 Ala. 691, 4 L.R.A. 113, 5 So. 785, 7 So. 48.

The reason for the enforcement of the strict rule, in the earlier history, was because of the power of great men, to whom rights of action were transferred in order to obtain support and favor in suits brought to assert these rights, confederacies which resulted in oppression. Slywright v. Page, Leon. pt. 1, p. 167; 4 Bl. Com. 135; Master v. Miller, 4 T. R. 320; Knight v. Bowyer, 2 De G. & J. 421, 27 L. J. Ch. N. S. 520, 4 Jur. N. S. 569, 6 Week. Rep. 565; Coondoo v. Mookerjee, L. R. 2 App. Cas. 186.

But, in this country, the reason for the ancient doctrine of champerty and maintenance does not exist, and hence has not found favor in the United States. Roberts v. Cooper, 20 How. 467, 15 L. ed. 969; Thallhimer v. Brickerhoff, 3 Cow. 623, 15 Am. Dec. 309; Mathewson v. Fitch, 22 Cal. 86; Bentinck v. Franklin & G. City Co. 38 Tex. 458.

But here the contract which really comes within the mischief of the rule, public policy and the administration of justice still demand its recognition and application. Lathrop v. Amherst Bank, 9 Met. 489; Gilbert v. Holmes, 64 Ill. 548; Barker v. Barker, 14 Wis. 142; Lafferty v. Jelley, 22 Ind. 471; Holloway v. Lowe, 7 Port. (Ala.) 488; Weakly v. Hall, 13 Ohio, 167, 42 Am. Dec. 194; Backus v. Byron, 4 Mich. 535; Thallhimer v. Brinckerhoff, 15 Am. Dec. 319, note; Dorwin v. Smith, 35 Vt. 69; Findon v. Parker, 11 Mees. & W. 975, 12 L. J. Exch. N. S. 444, 7 Jur. 903; Stanley v. Jones, 7 Bing. 369, 6 Eng. Rul. Cas. 376.

The distinction which courts make is whether the transaction is merely the bona fide acquisition of an interest in the subject of litigation, or whether it is an unfair or improper transaction, conceived and carried on merely for the purpose of illegal gain, spoil, or speculation. Gilbert v. Holmes, 64 Ill. 548; The Mohawk, 8 Wall. 153, 19 L. ed. 406; Boardman v. Thompson, 25 Iowa, 487; Brown v. Bigne, 21 Or. 260, 14 L.R.A. 745, 28 Am. St. Rep. 752, 28 Pac. 11; 5 R. C. L. 271, 272, and list of cases.

There is nothing in the contract or transaction here before the court to even hint that it comes within the champertous class. It seems, however, to clearly appear that appellant is seeking to take advantage of her own wrong, and to invoke the doctrine of public policy, on the clearest principles of estoppel. The plaintiff here is a mere layman, and this fact of itself constitutes a vast distinction. Champerty, 19 Alb. L. J. 469; Vimont v. Chicago & N. W. R. Co. 69 Iowa, 296, 22 N. W. 906, 28 N. W. 612; Gilman v. Jones, 87 Ala. 691, 4 L.R.A. 113, 5 So. 785, 7 So. 48; Holloway v. Lowe, 7 Port. (Ala.) 488; Byrd v. Odem, 9 Ala. 755; Coquillard v. Bearss, 21 Ind. 479, 83 Am. Dec. 362; Scobey v. Ross, 13 Ind. 117; Brown v. Beauchamp, 5 T. B. Mon. 413, 17 Am. Dec. 81; Bryant v. Hill, 9 Dana, 67; Cardwell v. Sprigg, 7 Dana, 36; Wilhite v. Roberts, 4 Dana, 172; Evans v. Bell, 6 Dana, 479; Thurston v. Percival, 1 Pick. 415; McMahan v. Bowe, 114 Mass. 140, 19 Am. Rep. 321; Arden v. Patterson, 5 Johns. Ch. 44; Thalimer v. Brinkerhoff, 20 Johns. 386; Slade v. Rhodes, 22 N. C. (2 Dev. & B. Eq.) 24; Weedon v. Wallace, Meigs, 286; Dorwin v. Smith, 35 Vt. 69; Martin v. Clarke, 8 R. I. 389, 5 Am. Rep. 586; Nicols v. Bunting, 10

N. C. (3 Hawks) 86; Martin v. Veeder, 20 Wis. 467; Martin v. Amos, 35 N. C. (13 Ired. L.) 201; Blaisdell v. Ahern, 144 Mass. 393, 59 Am. Rep. 99, 11 N. E. 681; Small v. Mott, 22 Wend. 405; Schomp v. Schenck, 40 N. J. L. 195, 29 Am. Rep. 219; Mathewson v. Fitch, 22 Cal. 86; Bentinck v. Franklin & G. City Co. 38 Tex. 458; Ballard v. Carr, 48 Cal. 74; Hoffman v. Vallejo, 45 Cal. 564; Manning v. Sprague, 148 Mass. 18, 1 L.R.A. 516, 12 Am. St. Rep. 508, 18 N. E. 673; Re Paschal (Texas v. White) 10 Wall. 483, 19 L. ed. 992; McPherson v. Cox, 96 U. S. 404, 417, 24 L. ed. 746, 750; Central R. & Bkg. Co. v. Pettus, 113 U. S. 116, 28 L. ed. 915, 5 Sup. Ct. Rep. 387.

By the great weight of modern authority, contingent fees charged for professional services, dependent on the amount recovered, are not within the rules against champerty and maintenance.    5 R. C. L. 276; Gilman v. Jones, 87 Ala. 691, 4 L.R.A. 113, 5 So. 785, 7 So. 48; Stanton v. Haskin, 1 McArth. 558, 29 Am. Rep. 612; Perry v. Dickens, 105 Pa. 83, 51 Am. Rep. 181; Notes to Bowman v. Phillips, 13 Am. St. Rep. 299; Shirk v. Neible, 83 Am. St. Rep. 169; Gargano v. Pope, 100 Am. St. Rep. 577; Lipscomb v. Adams, 112 Am. St. Rep. 510; British Cash & Parcel Conveyers v. Lamson Store Service [1908] 1 K. B. 1006, 1 B. R. C. 159, 77 L. T. K. B. N. S. 649, 98 L. T. N. S. 875, 14 Ann. Cas. 554; Gruber v. Baker, 20 Nev. 453, 9 L.R.A 302, 23 Pac. 858; Bernstein v. Humes, 60 Ala. 582, 31 Am. Rep. 52; Gilman v. Jones, 4 L.R.A. 113, and note, 87 Ala. 691, 5 So. 785, 7 So. 48; Adye v. Hanna, 47 Iowa, 264, 29 Am. Rep. 484; Manning v. Sprague, 148 Mass. 18, 1 L.R.A. 516, 12 Am. St. Rep. 508, 18 N. E. 673; Huber v. Johnson, 68 Minn. 74, 64 Am. St. Rep. 456, 70 N. W. 806; Duke v. Harper, 66 Mo. 51, 27 Am. Rep. 314; Schomp v. Schenck, 40 N. J. L. 195, 29 Am. Rep. 219; Thallhimer v. Brinckerhoff, 15 Am. Dec. 308, and note, 3 Cow. 623; Irwin v. Curie, 171 N. Y. 409, 58 L.R.A. 830, 64 N. E. 161; Weakly v. Hall, 13 Ohio, 167, 42 Am. Dec. 194; Reece v. Kyle, 49 Ohio St. 475, 16 L.R.A. 723, 31 N. E. 747; Powers v. Van Dyke, 27 Okla. 27, 36 L.R.A.(N.S.) 96, 111 Pac. 939; Brown v. Bigne, 21 Or. 260, 14 L.R.A. 745, 28 Am. St. Rep. 752, 28 Pac. 11; Croco v. Oregon Short Line R. Co. 18 Utah, 311, 44 L.R.A. 285, 54 Pac. 985.

Respondent is not an attorney, and did not buy a note, or any part

thereof, and was only interested in its collection as the agent of appellant. Mathewson v. Fitch, 22 Cal. 86; Woods v. Walsh, 7 N. D. 376, 75 N. W. 767.

A person may lawfully and in good faith employ a nonprofessional agent to aid him in collecting a claim or in the prosecution of a suit. 6 Cyc. 865; Raymond v. McCleery, 15 Ky. L. Rep. 269; Bell v. Gregory, 10 Ky. L. Rep. 636; Joy v. Metcalf, 161 Mass. 514, 37 N. E. 671; Renshaw v. First Nat. Bank, — Tenn. —, 63 S. W. 194.

Demurrer is not the proper remedy in such cases. Such objections must be specifically pleaded. Brumback v. Ordham, 1 Idaho, 709; Allison v. Chicago & N. W. R. Co. 42 Iowa, 274, 3 Am. Neg. Cas. 330; Major v. Insurance Co. of N. A. 112 Mo. App. 235, 86 S. W. 883; Ball v. Royal Ins. Co. 129 Mo. App. 34, 107 S. W. 1097; Cooke v. Pool, 25 S. C. 593.

CHRISTIANSON, J. This is an appeal from an order of the county court of Cass county overruling a general demurrer to plaintiff's complaint. The complaint, omitting the formal parts, is in words and figures as follows:

"I. That on the 25th day of November, 1911, one Martin E. Johnson executed and delivered to one Evan Johnson, his certain written promissory note, wherein and whereby he promised to pay to the order of said Evan Johnson on demand after date the sum of four hundred ninety-three ($493) dollars.

"II. That thereafter said Evan Johnson died, and his estate was thereafter duly probated in the county court of Clay county, Minnesota, a court of record and of general jurisdiction, and having jurisdiction of the estate and property of said Evan Johnson, including the note hereinbefore mentioned and described.

"That thereafter said estate was duly administered, and upon final distribution thereof, and on the 27th day of April, 1914, the hereinbefore mentioned and described note was duly assigned, transferred, and set over to the said defendant, and that said note was thereupon delivered over to said defendant as her separate property.

"III. That on or about the 17th day of September, 1914, the defendant entered into a certain agreement with this plaintiff, wherein

and whereby said defendant promised and agreed that, in consideration of the agreement of said plaintiff to undertake the collection, or the compromise and settlement of the cause of action, represented by said note, against the said Martin E. Johnson, that said defendant promised and agreed with this plaintiff to pay or cause to be paid to said plaintiff one half of the amount recovered or collected upon said note by the compromise and settlement or otherwise.

"IV. That said defendant, in conformity with said agreement with plaintiff, thereupon delivered over said note to this plaintiff, and that plaintiff thereupon undertook the collection or compromise and settlement of said note against said Martin E. Johnson in pursuance of said agreement with said defendant, and employed attorneys who commenced an action against the said Martin E. Johnson in the above-entitled court to recover the amount of said note, said action having been commenced under date of September 24, 1914; that thereafter said Martin E. Johnson appeared by his attorneys, and while said action was pending and with full knowledge on the part of said defendant that said plaintiff had undertaken to collect said note by said action, the said defendant on the 10th day of October, 1914, attempted to effect a settlement with said Martin E. Johnson, and did receive and accept from said Martin E. Johnson the sum of two hundred fifty ($250) dollars in compromise and settlement of said above-described note, without the knowledge or consent of this plaintiff, but after the said plaintiff had specifically advised the said defendant that said Martin E. Johnson had offered plaintiff's attorneys to settle said action by the payment of two hundred fifty ($250) dollars, and which amount plaintiff had refused, and after the defendant had advised plaintiff to proceed with the collection of said note by said suit according to his best judgment, and had promised to abide by the action of said plaintiff, in refusing to compromise and settle said note for two hundred fifty ($250) dollars, and to accept such compromise and settlement as such plaintiff saw fit to make with said Martin E. Johnson.

"Wherefore, plaintiff prays for judgment against the defendant in the sum of one hundred twenty-five ($125) dollars, with interest from and since the 10th day of October, 1914, and for his costs and disburse-

ments herein." Appellant's sole contention is that plaintiff's cause of action is based upon an agreement which is champertous and void.

Under the laws of this state it is presumed "that a person is innocent of crime and wrong," and "that private transactions have been fair and regular." (Comp. Laws 1913, § 7936, subdivs. 1 and 19.) The presumption, therefore, is that the agreement was not champertous, and the complaint must be liberally construed in favor of the pleading, and upheld, unless it clearly appears on the face thereof that plaintiff's cause of action is *per se* champertous and void. (See Weber v. Lewis, 19 N. D. 473, 476, 34 L.R.A.(N.S.) 364, 126 N. W. 105; 4 Standard Enc. Pl. 968.) It is conceded that the agreement does not violate the express provisions of any statute relative to champerty, but it is contended that it is contrary to good morals, and therefore void.

The original reasons for the protest against champertous contracts no longer exist. (See discussion of this subject in Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 112, 125, L.R.A. —, —, 151 N. W. 879; Browne v. Bigne, 21 Or. 260, 14 L.R.A. 745, 28 Am. St. Rep. 752, 28 Pac. 11; Gilman v. Jones, 87 Ala. 691, 4 L.R.A. 113, 5 So. 785, 7 So. 48; 5 R. C. L. 271; 6 Cyc. 852 et seq.) As the peculiar conditions of society which gave rise to the doctrine do not exist in this country, the tendency of the courts is strongly in direction of relaxation of the common-law doctrine. The United States Supreme Court has held that attorneys may lawfully contract with their clients to prosecute claims against the United States, and receive as compensation therefor, conditioned upon their success, an agreed amount or percentage of the sum recovered. Re Paschal (Texas v. White) 10 Wall. 483, 19 L. ed. 992; McPherson v. Cox, 96 U. S. 404, 417, 24 L. ed. 746, 750; Central R. & Bkg. Co. v. Pettus, 113 U. S. 116, 28 L. ed. 915, 5 Sup. Ct. Rep. 387. And although an agreement for contingent fees for professional services may contain provisions rendering it invalid, in whole or in part, still the mere fact that the compensation for such professional services is fixed in a certain amount or percentage of the amount recovered, and conditioned upon the success of the litigation, does not render such agreement champertous. The propriety, and even necessity, of such agreements under modern conditions, have been recognized by both bench and bar, as well as by the people's lawmaking representatives,

and their validity is sustained by the great weight of modern authority. See Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 112, 127, L.R.A. —, —, 151 N. W. 879; 5 R. C. L. 276; Woods v. Walsh, 7 N. D. 376, 383, 75 N. W. 767; British Cash & Parcel Conveyers v. Lamson Store Service [1908] 1 K. B. 1006, 1 B. R. C. 159, 77 L. J. K. B. N. S. 649, 98 L. T. N. S. 875, 14 Ann. Cas. 554; Gilman v. Jones, 87 Ala. 691, 4 L.R.A. 113, 5 So. 785, 7 So. 48; Stanton v. Haskin, 1 McArth. 558, 29 Am. Rep. 612; Perry v. Dickens, 105 Pa. 83, 51 Am. Rep. 181. See also notes contained in 15 Am. Dec. 321; 13 Am. St. Rep. 299; 83 Am. St. Rep. 169; 100 Am. St. Rep. 577; and 112 Am. St. Rep. 510.

Appellant's counsel say in their brief: "The general purpose of the law against champerty and maintenance is to prevent intermeddlers from stirring up strife and vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent remedial processes of the law." This seems to be a fair statement, so far as it goes, when applied to transactions of the kind involved herein.

No good purpose would be accomplished by quoting any of the numerous definitions of champerty found in the books. While the authorities differ as to all the ingredients essential to constitute champerty, they seem agreed that the gist of the offense is the malicious or officious intermeddling in a suit in which the intermeddler has no interest. 5 Am. & Eng. Enc. Law, 819; Gilman v. Jones, 87 Ala. 691, 4 L.R.A. 113, 5 So. 785, 7 So. 48; Brown v. Bigne, 21 Or. 260, 14 L.R.A. 745, 28 Am. St. Rep. 752, 28 Pac. 11.

In the case of Woods v. Walsh, 7 N. D. 376, 383, 75 N. W. 767, this court discussed, but did not decide, the question of whether an agreement on the part of an attorney to prosecute an action at his own expense for a certain percentage of the amount recovered was champertous. The court said: "It is true that champertous agreements have been held obnoxious from a very early period in the history of the common law. The statute in this state has singled out certain agreements which were champertous at common law, and declared that the same are misdemeanors. See Revised Codes, §§ 7008–7013. The case at bar reveals no features which bring it within either of the sections we have cited. There is no pretense that the plaintiff in the action has ever sold or at-

tempted to sell the claim in suit—*i. e.,* two promissory notes—to his attorneys. Much less is it claimed that any transfer of the notes has ever been made to plaintiff's attorneys, or agreed to be made to them. Put in its strongest terms, the affidavits filed in defendants' behalf show that plaintiff agreed with one of his attorneys to pay the attorney one half of the amount which should be recovered in the action, on condition that the attorney would take up and prosecute the case at the attorney's own cost and expense. We question whether such an agreement is champertous in this state. It certainly is not an act which the statute of this state punishes as a misdemeanor. We think that, under the laws of this state, an attorney may lawfully contract for a contingent fee to be measured by the amount recovered by an action. Rev. Codes, § 5574. To purchase a claim for the purpose of suing the same is a misdemeanor in an attorney under the statute. Id. § 7008. But there is a line of separation between the purchase of a claim for the express purpose of suing the same, and a mere agreement for compensation, such as is claimed existed here."

In considering a somewhat similar question in Brown v. Bigne, 21 Or. 260, 14 L.R.A. 745, 28 Am. St. Rep. 752, 28 Pac. 11, the supreme court of Oregon said: "The gist of the offense consists in the officious intermeddling in another suit, and contracts not within the mischief to be guarded against should not be held to come within the rule. . . . The purchase of a right, which is the subject-matter of a pending lawsuit by one standing in no fiduciary relation, is not unlawful, unless it be made for the mere purpose or desire of perpetuating strife and litigation; nor can it make any difference, on principle or authority, that the consideration for the purchase is to be used in conducting the litigation and paying the expenses thereof. A fair bona fide agreement, by a layman, to supply funds to carry on a pending suit, in consideration of having a share in the property if recovered, it seems to us, ought not to be regarded as *per se* void either on the grounds of champerty, as now understood, or of public policy. Indeed, it may sometimes be in furtherance of justice and right that a suitor who has a just title to property, and no means except the property itself, should be assisted in that way. The doctrine of champerty is directed against speculation in lawsuits, and to repress the gambling propensity of buying up doubtful claims.

It is not and never was intended to prevent persons from charging the subject-matter of the suit in order to obtain the means of prosecuting it. 1 Addison, Contr. 392; Stotsenburg v. Marks, 79 Ind. 193. But agreements of the kind above suggested should be carefully watched and closely scrutinized, when called in question, and if found to have been made, not with a bona fide object of assisting a claim believed to be just, but for the purpose of injuring and oppressing others by aiding in unrighteous suits, or for the purpose of gambling in litigation, or to be so extortionate or unconscionable as to be inequitable against the party, effect ought not to be given to them. Courts administering justice according to the broad principles of equity and good conscience, as they are bound to do, will consider whether the transaction is merely the bona fide acquisition of an interest in the subject of litigation, or whether it is an unfair or illegitimate transaction, gotten up for the purpose merely of spoil or speculation. The doctrine of champerty, to the extent that furnishing aid in a suit under an agreement to divide the thing recovered is *per se* void, we think ought not to prevail, when such aid is furnished by a layman; but when such contracts are made for the purpose of stirring up strife and litigation, harassing others, inducing suits to be begun which otherwise would not be commenced, or for speculation, they come within the analogy and principles of that doctrine, and should not be enforced. Gilbert v. Holmes, 64 Ill. 548; The Mohawk, 8 Wall. 153, 19 L. ed. 406; Boardman v. Thompson, 25 Iowa, 487."

Appellant's counsel contends that the contract set forth in the complaint gave Rohan as agent exclusive power to settle or compromise the note, and hence prohibited the defendant from settling the action without the consent of Rohan. We do not believe the complaint is susceptible of this construction. It seems to be a well-settled rule of law that an authorization to collect a claim does not confer upon the agent power to compromise or settle a claim. See 31 Cyc. 1373; 3 Am. & Eng. Enc. Law, 358. And the complaint merely alleges that plaintiff was given such authority. There is nothing in the complaint to indicate that any restriction was placed on defendant's right to settle her cause of action. The action was commenced in her name, and upon her authorization, and she made settlement thereof. Plaintiff does not

seek to set aside or defeat the settlement made by defendant, but recognizes such settlement, and bases his demand herein, not upon the amount of the claim, but the amount of the settlement. Under the holding of this court in Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 112, 127, L.R.A. —, —, 151 N. W. 879, the whole contract is not rendered invalid by a clause prohibiting the client from settling the suit without the consent of the attorney, but such clause may be stricken from the contract, and the balance of it upheld.

The law recognizes the fact that the services of nonprofessional agents may be desirable or necessary in collecting or enforcing claims. (See 6 Cyc. 865.) Mercantile and commercial agencies are recognized establishments in, and collection agencies are by no means strangers to, the modern conditions of business and commerce, and the practice of collecting claims upon a commission or percentage basis of the amount collected is too well known to require elucidation. There is nothing on the face of the complaint to indicate that the plaintiff was guilty of officious intermeddling in a lawsuit, or that the contract was made for the purpose of stirring up strife or litigation, or to encourage the bringing of an action upon a doubtful claim, or for the purpose of injuring or oppressing anyone by the prosecution of an unrighteous suit upon a doubtful or speculative claim, or that plaintiff agreed to pay the cost and expense of litigation. Nor is there anything to show that litigation was contemplated at the time the agreement was made.

The agreement set forth in the complaint is merely to collect, compromise, or settle a promissory note in consideration of a certain percentage of the amount collected or recovered. Such agreement is not *per se* void either on the ground of champerty or public policy. The demurrer was properly overruled.

The order appealed from is affirmed.