## COUNTY OF STARK, Respondent, v. ADAM MISCHEL et al., Appellants.

(6 A.L.R. 174, 173 N. W. 817.)

**Attorney and client — good faith — conflicting interests.**

1. It is the duty of an attorney to exercise the highest good faith in the interests of his client, whether in public or in private office, and, for private reward to himself, he cannot abandon the cause of his client as a public officer without reasonable cause and undertake an employment as a private attorney upon litigation pending which he has instituted and established in a court of law as a valid and just cause, where such action is antagonistic to the interests of his client and his duty as an attorney.

NOTE.—On power of public body to employ attorney on contingent fee, see note in L.R.A.1917D, 263.

On what contracts of attorneys are void as against public policy, see note in 13 Am. St. Rep. 299, where it is held that an agreement that an attorney is to receive, as compensation for his services, a portion of the subject-matter of the litigation, is not champertous.

On attorney's compensation contingent on a fixed sum or a percentage, see note in 15 L. ed. 504.

**Contracts — attorney and client — contingent fees.**

    2. A contract between attorney and client, which provides that the attorney shall save the client harmless from all expenses that may be incurred in proposed litigation out of which the attorney is entitled to a contingent fee of the amount received, if successful, is champertous in its nature and void as against public policy.

**State's attorney — duty of — payment for special services to county — when unauthorized.**

    3. Where a state's attorney, in the performance of his duty, instituted an action upon a claim in favor of the county, which thereafter the state court adjudicated to be a valid and just claim in favor of such county, by its judgment entered, and prior thereto the board of county commissioners enacted a resolution providing that such state's attorney should handle such claim upon a contingent fee of 50 per cent, and should have the county harmless from all costs involved therein, and thereafter, subsequent to the entry of such judgment in the state court, such state's attorney resigned and entered into a contract with the board of county commissioners in accordance with the terms of the said resolution, and the board of county commissioners thereupon appointed as state's attorney the former assistant state's attorney, who had assisted in, and was familiar with such litigation, and where thereafter such former state's attorney acted for the county pursuant to such contract and secured the payment of such judgment by a recognition and settlement of such judgment in certain actions pending in the Federal court concerning such claim, and received, pursuant to such settlement, the fee stipulated, it is *held*, in an action to recover from such former state's attorney and the former county commissioners and their sureties the amount so paid as an unauthorized and illegal payment, that the same was void for reasons of public policy, and that the trial court did not err in so finding.

Opinion filed May 31, 1919.

Action to recover an unauthorized and illegal payment made upon a contract with an attorney. From a judgment rendered in the District Court of Stark County, in favor of the plaintiff, the defendants appeal.

Affirmed.

    *Engerud, Divet, Holt, & Frame* and *John F. Sullivan,* for appellants.

When a state court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed

and the jurisdiction involved is exhausted. Gage v. Trust Co. 86 Fed. 894; Freeman v. Howe, 65 U. S. 450; Herdritti v. Oil Cloth Co. 112 U. S. 294.

A civil officer has the right to resign his office at pleasure, and it is not in the power of the executive to compel him to remain in office. Comp. Laws § 683, subdiv. 3, § 684, subdiv. 5; United States v. Wright, 1 McLean, 509, Fed. Cas. No. 16,775; People v. Carter, 6 Cal. 26; State v. Hauss, 43 Ind. 105; Leech v. State, 78 Ind. 570; Gates v. Clark, 3 Nev. 566; Gilbert v. Luce, 11 Barb. 91; Connor v. Mayor, 2 Sandf. 371, 5 N. Y. 295; State v. Nayor, 4 Neb. 260; State v. Litts, 49 Ala. 402.

*L. A. Simpson, W. F. Burnett,* and *Thomas H. Pugh,* and *J. P. Cain,* State's Attorney, for respondent.

The county board is vested with and possesses, and can exercise only, such powers as are by statute conferred upon it, or as may be necessarily or reasonably implied from the powers thus expressly conferred. 15 C. J. 457; Morse v. Grant County (Mont.) 119 Pac. 286; State Bd. of Control v. Buckstegge (Ariz.) 158 Pac. 839; Wadsworth v. Board of Supers. (N. Y.) 112 N. E. 163; Pierson v. Minnehaha County (S. D.) 134 N. W. 212.

A contract made by the board of county commissioners for the county with attorneys at law for their services as such, and which services the county attorney is bound to perform, is ultra vires and void. Storey v. Murphy, 9 N. D. 115; Pierson v. Minnehaha County (S. D.) 134 N. W. 212; Wilson v. Otoe County (Neb.) 98 N. W. 1050; Platte County v. Gerard (Neb.) 11 N. W. 298; Brome v. Cumming (Neb.) 47 N. W. 1050; State v. Stockwell, 23 N. D. 70, 134 N. W. 767.

BRONSON, J. This is an action at law to recover county funds from the former county commissioners and the former state's attorney of Stark county, and their sureties, alleged to have been unlawfully converted to the use of such former state's attorney. The action was tried to the court without a jury, and, from a judgment rendered in favor of the plaintiff for $4,794.74 and interest, the defendants have appealed.

There is practically no dispute in the record concerning the facts. The record therefore presents for consideration only questions of law.

The necessary facts to be stated in accordance with the principles of law applied by this court are as follows:

One J. S. White was formerly county auditor of Stark county, for four successive terms, up to December 15, 1909, when it was discovered that, during several terms of his office, he had forged and secured payment of county warrants which aggregated, in payments out of county funds, over $30,000; he was removed from office, subsequently convicted, and sentenced to the state penitentiary.

Later, the county of Stark instituted an action against the respective county treasurers and their sureties, during the said county auditor's terms, to recover amounts that had been paid out of county funds by such county treasurers upon such forged warrants. As a result of this action, judgments were rendered and collected in favor of the county to the amount of over $33,000. The defendant Murtha became state's attorney of Stark county, through election, in January, 1911. After becoming such state's attorney, he assisted in collecting and settling up such judgments.

Later, some of the surety companies, upon the bonds of the county treasurers in question, instituted suit in equity in the Federal court to recover from the surety, upon the official bond of the convicted county auditor, for the amount that they had been compelled to pay as sureties, upon principles of subrogation; this was in the fall or latter part of the year of 1911. In one of the actions so instituted in the Federal court, the Dakota National Bank of Dickinson was made a defendant to recover from it amounts that had been paid the bank upon such spurious warrants, upon the ground that such bank had not acquired the same in good faith. Thereupon, such bank and another bank in the city of Dickinson, and the city of Dickinson, filed a cross bill and complaint in intervention in the month of March, 1912, setting up spurious warrants paid by them and held by them, which had been acquired in good faith, and asserting the right of recovery thereupon from the defendant surety on the convicted auditor's bond, upon equities superior to the claim of the plaintiff surety company.

In the month of July, 1912, the defendant Murtha, as state's at-

torney for Stark county, instituted an action in the district court of
that county against the convicted county auditor and his surety to
recover an additional claim due the county by reason of his defalca-
tions, including interest and expenses incurred, not theretofore paid
upon the prior actions instituted, and maintained by the county against
the county treasurers and their sureties.  When this new action in the
state court became known to the parties to the action in the Federal
court, action was then taken in such Federal court, whereby the
county of Stark was brought in as a party claimant to the money
sought to be recovered.  In the action in the state court, the surety
company answered.  The action subsequently came to trial on the 4th
day of January, 1913, before the court without a jury.

In the meantime, the defendant Murtha had been re-elected as state's
attorney; he continued to handle this action; on February 1, 1913, the
trial court made findings in favor of the county and ordered judgment
against the convicted auditor and his surety for $9,203.13 and costs.
In this action the defendant Murtha, however, testified that these find-
ings, though dated February 1, 1913, were not signed by the trial
court until February 17, 1913.

Pursuant to such findings, judgment was rendered in favor of the
county on February 19, 1913.  Later, it appears that the Federal
court served an order to show cause upon said Murtha, as attorney
for the county, why execution should not be enjoined in the state
court, and Murtha testified that the Federal judge did not so issue an
injunction because he agreed not to take out an execution.  On Febru-
ary 18, 1913, the defendants the county commissioners of Stark county
passed the following resolution: "Resolved that T. F. Murtha, an
attorney at law of Dickinson, N. D., be retained to attend to the de-
fense of this county in the three cases now pending in the United
States district court for the district of North Dakota, and he is to save
this county harmless from all expense on account of said litigation,
and is to receive for said services and such disbursements a sum equal
to one half of the sum recovered, actually paid into the county treas-
ury of this county from the Northern Trust Company on the bonds of
former auditor J. S. White.  If there is no recovery on said bonds, said

attorney is to receive no compensation, either for services or disbursements."

At that time the defendant Murtha was state's attorney.

Later, on August 8, 1913, in the evening at a meeting of such county commissioners, the defendant Murtha, being present before such commissioners, tendered his resignation as state's attorney, and the same was accepted and ordered filed. Thereupon, such commissioners at such meeting appointed as state's attorney J. P. Cain, who was then the assistant state's attorney, to fill the unexpired term. Then, at such meeting the following agreement was drawn and signed:

It is agreed that T. F. Murtha, an attorney at law of Dickinson, N. D., be retained to attend to the defense of this county in the three cases now pending in the United States court at Fargo, N. D., and he is to save the county harmless from all expenses on account of said litigation, and is to receive for said services and such disbursements a sum equal to one half of the sum recovered, actually paid into the treasury of said county from the Northern Trust Company on the bonds of former auditor, J. S. White. If there is no recovery on said bonds, said attorney is to receive no compensation either for services or disbursements.

Dated this 8th day of August, 1913.

Board of Commissioners,

D. Hughes, Chm.

F. A. Roquette.

A. F. Mischel.

T. F. Murtha.

On September 4, 1913, the cases mentioned in the Federal court came up for hearing. Then the parties recognized through a settlement then made the priority and validity of the claim of Stark county, as evidenced by the judgment rendered in the state court, and thereupon made arrangement to pay the same in full. The defendant Murtha there represented the county of Stark pursuant to the agreement made. Pursuant thereto, on September 8, 1913, the check of the Northern Trust Company, the surety of the convicted county auditor, was issued payable to the county treasurer of Stark county for $9,589.43. On the

same day a county warrant was issued pursuant to a voucher filed therefor to the defendant Murtha for one half of such amount, namely, $4,794.71, upon which the county treasurer on September 11, 1913, issued his check in payment therefor.

Accordingly, on December 26, 1913, this action was instituted to recover such amount as an illegal and unauthorized payment. The defendant demurred to the complaint, and this court passed upon such demurrer in Stark County v. Mischel, 33 N. D. 432, 156 N. W. 931; holding the complaint to state a cause of action against such former officials and their sureties. Subsequently, on December 27, 1916, upon issues framed, the action came to trial in the district court.

On November 8, 1917, in this action the trial court made its findings, holding among other things as follows:

On February 18, 1913, and for more than two years preceding such time, Stark county had a valid claim and cause of action for $9,239.13 against said convicted auditor and his surety; that prior to said February 18, 1913, the district court had made its order for judgment in favor of said Stark county upon such claim and cause of action.

That on February 18, 1913, judgment was about to be entered for the amount of such claim, which the former county commissioners and the former state's attorney, the defendants herein, then knew; that on such date the defendant county commissioners unlawfully engaged and agreed to pay said defendant Murtha, pursuant to the terms of the resolution adopted on said date; that it was then the duty of said defendant Murtha, as state's attorney, to perform such services without receiving any additional compensation, which the defendants then knew. That, on the evening of August 8, 1913, the defendant Murtha submitted his resignation as state's attorney to the said board of county commissioners; that the same was then accepted and said J. P. Cain appointed as state's attorney. That said Cain had theretofore been assistant state's attorney, and had assisted in the case involved and was familiar with all the facts in connection with the same. That he qualified as state's attorney on August 9, 1913; that the resolution dated August 8, 1913 (hereinbefore set forth), was not recorded in the minutes of the proceedings of the board of county commissioners, was not published in any of the official newspapers of the county as a part of such proceedings, was not in the records or

files of the commissioners' proceedings or in the office of the county auditor, and was produced at the time of the trial by the defendants; that the existence of such exhibit was unknown to the attorneys for the plaintiff or to anyone else excepting only the said county commissioners, or defendant Murtha and the county auditor. The trial court, in its conclusions, determined the attempted employment to be unlawful, void, and against public policy. That it was violative of the official duties of the defendants as public officers; that, furthermore, it was the official duty of the defendant Murtha, and his successor, J. P. Cain, to perform the work and services of collecting such judgment. Pursuant to such findings, on November 12, 1917, judgment was rendered against the appellants herein.

The appellants specify error of the trial court in excluding offered testimony, rejecting their proposed findings, and in making erroneous findings. In view of the principles of the law, applicable in the determination of this appeal, the trial court committed no error in rejecting the offered testimony of the defendant Murtha concerning advice of former Attorney General Miller to the board of county commissioners upon its right of recovery upon the subject-matter involved in the action of Stark county against the convicted auditor and his surety.

The principal contention of the appellant is based upon the proposition that the county of Stark did not have a valid cause of action against the convicted auditor and his surety upon the judgment for which it recovered judgment for $9,239.13. That when the state's attorney resigned, the claim of the county was very shadowy and doubtful; that the county commissioners were unwilling to spend further county moneys in an attempt to recover the amount claimed. That the state's attorney had a perfect right to resign and a perfect right to make a contract as a private attorney with the county commissioners concerning this doubtful litigation, and that the former county commissioners, within their lawful powers legally made this contract with the former state's attorney, and that therefore the claim paid, after the successful termination of the litigation, to such former state's attorney, was a valid, legal, and binding obligation upon the county.

We are wholly satisfied upon this record that the trial court has erred neither in its findings of fact, nor in its conclusion of law.

The appellants' counsel are in no position to assert or even contend that the claim of the county was of doubtful or questionable validity. By so doing they impugn the good faith and ability of their client, the defendant Murtha, in performing his duties as state's attorney.

As an attorney, he in fact instituted this action in the state court in behalf of the county. It was his duty as an attorney to exercise his best judgment in determining the merits of the claim before action. It is to be presumed that he did. He does not testify to the contrary. It is likewise presumed that the county commissioners permitted him to institute this action, and acted in accordance with the advice that he gave concerning the institution of such action.

Kinkead, in his work on Professional Ethics, p. 342, states that "lawyers first pass judgment upon the merits of a case or defense; and it is believed that the courts and the public have a right to demand that in arriving at that judgment they shall exercise great care and diligence in ascertaining the facts and the law applicable to the facts, and act only in the line of their best judgment so formed."

Necessarily therefore, as state's attorney, the defendant Murtha first passed judgment upon the merits of the claim of the county; necessarily, if it be conceded that he acted in the interests of his client, the county, he believed that the county had a valid and just claim. Otherwise he would not have brought the action. Fundamental rules therefore, of common honesty as well as of legal ethics, prevent the appellants from now trying to assert that that which they believed in exercising their best judgment was a valid claim, and which the state court determined to be a valid and just claim was of doubtful validity. In addition, there is the further fact that the parties in the Federal court did not dispute the validity of the claim of the county, but in fact recognized and paid the same. The appellants, in part, concede that, if the judgment were valid, the payment would be illegal because the collection of the judgment would be a part of the defendant Murtha's official duties as state's attorney, and that he could not legally be paid anything except his regular salary for duties he might be required to perform as state's attorney. We have no hesitancy in arriving at the conclusion that the trial court properly determined that there was a valid subsisting claim in favor of the county, existing at the time the resolution of February 18, 1913, was adopted, at

least, so far as the parties herein are concerned. For this reason alone the judgment of the trial court might properly be affirmed.

There is, however, another principle of law which directly applies to the record facts in this case, upon which the contract made by the defendant former official was illegal and against public policy. Upon the record herein the plain duty of the defendant Murtha to his client, whether it be viewed as that of state's attorney or in the relation of attorney and client, is plain. No other reason is shown in the record for the resignation of the defendant Murtha except for the purpose of receiving this appointment as a private attorney. No other inference can be drawn as a cause of such resignation other than the possible reward which would accrue to him while acting as an attorney for such county in a capacity other than his theretofore official position. Above all things it is the prime duty of an attorney whether, as such in public office or as a private attorney, to exercise the highest good faith in the interests of his client. It was the duty of the defendant Murtha as state's attorney to prosecute and use his best endeavors to collect this claim. It is not shown in the record that he would not have been equally successful if he had remained state's attorney and continued in that capacity to represent his client in the litigation already adjudicated in the state court. In effect, his resignation and the acceptance thereof were antagonistic to the best interests of his client. It gave to him the opportunity, against the highest interests of his client, to receive a reward and a compensation that otherwise he would not have received as state's attorney in the performance of his official duty.

It was one of his particular duties as a lawyer and, acting in that capacity in a public office, with this important litigation pending, to not abandon his client without just cause therefor, and to not seek thereby to reap a reward and a compensation by means of knowledge and information gained while acting in such public office. Among the fundamental rules of ethics is the principle that an attorney who undertakes to conduct an action impliedly stipulates to carry it to its termination, and he is not at liberty to abandon it without reasonable cause. Weeks, Attys. § 255; 6 C. J. 673; see Nickells v. Nickells, 5 N. D. 125, 33 L.R.A. 515, 57 Am. St. Rep. 540, 64 N. W. 73.

This court would indeed be derelict in its duty in the administration of justice if it sought for a moment to uphold the right of an officer

of this court, an attorney at law, to recover upon a contract of this sort so made which disregards the prime duties of an attorney to his client, and which thereby would serve to reflect upon the just and proper administration of justice. We have no hesitancy in determining such contract to be illegal and void upon grounds of public policy, whether the matter be viewed in connection with the duties of the defendant Murtha as a public officer or as a private attorney. Furthermore, the resolution of February 8, 1913, and the contract of August 8, 1913, both of them, contained a provision violative of another fundamental rule of legal ethics, long recognized in the history of the bar, and in law, concerning the relations of attorney and client.

Under the doctrine of champerty, long has been recognized the impropriety of an attorney speculating in lawsuits, and becoming a gambler in litigation, at his own cost. The provision in such resolution and contract which required the defendant Murtha to save harmless the county of Stark against all costs, and which thereby imposed the burden of carrying on the litigation and paying the costs and expenses thereof at his own peril, was champertous in its nature for reasons of public policy long and well established; it served to vitiate and render void such contract. 11 C. J. 241; 6 R. C. L. 276; see Woods v. Walsh, 7 N. D. 376, 75 N. W. 767; see Rohan v. Johnson, 33 N. D. 179, L.R.A.1916E, 64, 156 N. W. 936, Ann. Cas. 1918A, 794. See No. 10 Canon of Ethics, Am. Bar Assoc.

The judgment of the trial court is affirmed, with costs to the respondent.

BIRDZELL, J. (concurring specially). I concur in the affirmance of the judgment for the reasons assigned in the opinion of the court as prepared by Mr. Justice Bronson, except wherein it is held that champerty *necessarily vitiates and renders void* a contract for the employment of an attorney. By thus qualifying my concurrence in the main opinion, I do not wish to be understood as either contenancing or discountenancing so-called champertous agreements.

This agreement being void for the other reasons assigned, I deem it unnecessary to consider whether or not its champertous character would of itself vitiate it. This might depend upon the circumstances, and while I am not willing to say that the circumstances in the instant

case might not justify holding the contract void on that ground, I am not prepared to hold that under all circumstances such agreements are void. It is unnecessary to so hold. The question is primarily one of public policy and as such it has been somewhat discussed in the prior decisions of this court. See Woods v. Walsh, 7 N. D. 376, 75 N. W. 767; Rohan v. Johnson, 33 N. D. 179, L.R.A.1916E, 64, 156 N. W. 936, Ann. Cas. 1918A, 794; Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 112, 151 N. W. 879, Ann. Cas. 1917D, 908. In these cases it has been shown that the reasons which formerly existed for holding contracts involving champerty and maintenance void no longer obtain, at least in equal degree. I would not be disposed to differentiate between legal and illegal agreements on the basis that they are differentiated in some jurisdictions, where distinctions are recognized between agreements which provide that the attorney is to have for his services a portion of the proceeds and agreements that he is to have an amount equivalent to a certain percentage of the proceeds and a lien upon the proceeds for payment. See Blaisdell v. Ahern, 144 Mass. 393–395, 59 Am. Rep. 99, 11 N. E. 681.

Such distinctions are based upon no real differences of situation or of actual tendency, and the same is true as to maintenance. In my view, one contributes quite as much to the maintenance of an action, that might not otherwise be brought, by agreeing to pursue it for a contingent fee, as he does by agreeing to contribute something in the way of costs. The ultimate effect is, generally, when the attorney stipulates for a contingent fee, that a suit is brought that would not otherwise have been brought, because of the inability of the client to pay a stipulated fee. Without such arrangements there would often be a failure of justice. There is yet a legitimate scope for the contingent fee. Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. supra. I mention these matters here merely to indicate that, in my judgment, there is no occasion either to define illegal champerty and maintenance upon the basis of the presence or absence of stipulations insuring against costs and actually sharing in the proceeds of the litigation, or to characterize all such agreements as void because they result in giving those who are not otherwise interested an incentive to pursue litigation. As said above, there are other arrangements that have the same effect.

There is another reason why I wish to qualify my concurrence. In the opinion of the court it is said that "common honesty as well as legal ethics prevent the appellants from now trying to assert that that which they believed in exercising their best judgment was a valid claim, and which the state court determined to be a valid and just claim, was of doubtful validity." I can see no occasion for characterizing the action of the appellants in presenting the doubtful features of the county's claim as being dishonest. I can see no question of honesty involved in arguing to this court or any other court that the claim which the county had and which it agreed to share with the attorney was of doubtful validity. Nor can I see the force of the suggestion that an attorney, in bringing an action, is subsequently precluded from asserting what he actually believes to be the case; namely, that the claim upon which the action was founded was of somewhat uncertain legal validity. He might have honestly so believed at the time the action was instituted and he might have honestly so advised his client. The client would have had a perfect right to bring the action even though the claim were somewhat doubtful. I can see nothing in these circumstances to prevent the attorney from subsequently asserting his belief in the doubtful character of the claim, so long as it is not done to his client's detriment. And it is inconceivable to me that his assertions to this effect can be regarded as dishonest.

As a matter of fact this court knows judicially that approximately two thirds of the claim was, at the time the action was brought, so gravely doubtful in character, it being based upon interest, that this court, in Dickinson v. White, 25 N. D. 523, 49 L.R.A.(N.S.) 362, 143 N. W. 754 (which was pending for decision at the time the action was brought by the county), upon petition for rehearing, receded from views previously expressed, and held that interest, as against sureties on official bonds, could be recovered only from the date of the notice to the sureties of the breach or from the date of the demand. This was held in a companion case to that brought by Murtha on behalf of the county, having arisen out of the same defalcation. It was pending when that case was brought and was undecided at the time the judgment was rendered in the county's action and at the time of the settlement in the Federal court.

I agree, however, with the proposition asserted in the opinion of the

court that the same ethical considerations which render the contract for employment invalid also operate to prevent the contention of the appellants, based upon the doubtful character of the county's claim, from having any weight in support of the claim for fees. The contract for fees being void for the reasons assigned, is not legally revived or reinstated by the good fortune of the county in having its doubtful claim fully satisfied.

CHRISTIANSON, Ch. J. (concurring in part and dissenting in part). I concur in the conclusion reached by the majority members in this case, but am not prepared to concur in all that is said in the majority opinion. That opinion holds in effect that a contract between an attorney and client whereby the former agrees, in consideration of having a part of the money or thing recovered, to pay the costs and expense of the litigation, is champertous and void. This is directly contrary to the ruling of this court in Woods v. Walsh, 7 N. D. 376, 75 N. W. 767. That decision was rendered in 1898. The court therein pointed out that the legislature had defined champerty, and in so doing had singled out certain agreements which were champertous at common law and declared them to be misdemeanors; but that the legislature had not declared a contingent fee contract between attorney and client to be champertous even though the attorney agreed to pay the costs and expenses of the litigation. No subsequent legislature has seen fit to declare such contracts to be void. The law upon the subject remains as it was. See §§ 9412–9418, Comp. Laws 1913. The declaration of the public policy of the state is primarily a matter for the lawmaking body. It is for the legislature to determine what is best for the public good, and to provide for it by legislative enactments. The province of the courts is to expound the law as it is, and to enforce the public policy as therein expressed. 6 R. C. L. 109.

Nor do I concur in what is said with respect to appellants being estopped from asserting that the claim of Stark county against the surety company was one of doubtful validity. As a matter of fact this court knows not only that the claim was of doubtful validity, but that under the ruling of this court in Dickinson v. White, 25 N. D. 523, 49 L.R.A.(N.S.) 362, 143 N. W. 754, more than two thirds thereof was without any validity whatsoever. If the litigation between

the county and the surety company and the different claimants had not been determined or adjusted before that decision was handed down, there can be no question but that the county would have received not to exceed one third of the amount of money which it did. Are suits never brought except where the right of recovery is certain and un-debatable? The question requires no answer. An examination of the decisions of this court, and of other courts of last resort, will disclose that in many of the cases the members of the court disagreed upon the question of liability. The very fact that a lawsuit is brought by one able and reputable attorney and defended by another equally able and reputable indicates that there is a difference of opinion and some doubt as to liability. While it is true the major portion of the claim upon which Stark county recovered did not constitute a valid claim against the surety company and the adverse claimants this could not affect the validity of the arrangement between the county commis-sioners and Murtha, although it does have some bearing upon the actual good faith of the parties thereto. But if that arrangement was void as a matter of law from its inception, it was not validated by the fact that the adverse parties permitted Stark county to receive more than was legally coming to it.