J. H. WISHEK and Danzig Grain Company, a Corporation, Respondents, v. UNITED STATES FIDELITY & GUARANTY COMPANY, BALTIMORE, MARYLAND, a Corporation, Appellant.

(213 N. W. 488.)

**Evidence — witness may estimate quantity — experience.**

1. A witness may give his estimate as to the quantity of a commodity that he has examined if he possesses sufficient knowledge and data on which to ground an estimate and shows this by stating the facts on which his inference is based.

**Evidence — ordinary person as witness — experienced person as witness.**

2. Expert testimony is admissible where the matter under investigation is one upon which the ordinary individual without large experience would be unable to form a correct judgment, while one with experience might be able to do so.

Annotation.— (4) On admissibility of shop books as evidence, see 10 R. C. L. 1172; 5 R. C. L. Supp. 590.

**Evidence — books and records admissible.**

3. Papers, records and books made and kept by the principal of a surety bond in the ordinary and usual course of the business in which he is bonded are admissible in evidence in an action against his surety to recover the penalty of the bond.

**Evidence — papers kept in business admissible.**

4. All papers and instruments made in the usual and ordinary course of business as a part of the system of keeping a record of the transactions to which they pertain are, when shown by the testimony of those who made them and in whose custody they have been kept to be true and correct, admissible in evidence to establish such transactions; and where there are great numbers of such papers and instruments a general identification of them is sufficient without segregation and examination of each particular item, paper or instrument, where their truth and correctness is not challenged other than by objection and full opportunity to cross-examine the witnesses identifying them is afforded to the party objecting to their admission.

**Evidence — competent person may present conclusions.**

5. Where it is impracticable or impossible for the court to make an examination of a large number of papers, entries and records which have been offered and received in evidence, a competent witness may make such examination and present his conclusions thereon to the court.

Opinion filed April 21, 1927.

Appeal and Error, 4 C. J. § 2722 p. 775 n. 26; § 2982 p. 999 n. 22. Evidence, 22 C. J. § 182 p. 218 n. 88; § 483 p. 405 n. 43, 47; § 675 p. 567 n. 55, 59, 60, 61, 62; § 728 p. 632 n. 23; p. 633 n. 24; § 1027 p. 857 n. 73; § 1083 p. 889 n. 27, 29; § 1161 p. 944 n. 53 New; § 1303 p. 1017 n. 88.

Appeal from the District Court of McIntosh County, *Wolfe, J.*
Affirmed.

*Sullivan, Hanley & Sullivan,* for appellant.

"A general rule is that witnesses must testify to facts and not opinion . . . or when all facts upon which the opinion is based can be ascertained and be made intelligible to the court and jury, the inferences or conclusions must be drawn by the jury and the opinion of the witnesses cannot be received." Parkin v. Grayson Owen Co. (Cal.) 106 Pac. 210; McCown v. Muldrow, 91 S. C. 523, 74 S. E. 386.

"The opinion of a witness is not admissible where all the facts are capable of being clearly detailed so that the jury may form correct

conclusions therefrom." Hicks v. Davis, 120 Pac. 260; McCown v. Muldrow, 91 S. C. 523, 76 S. E. 386.

"Where in issue, its subject matter, and the facts which condition its decision are simply open and open to the common understanding so that no special skill is required to form a correct judgment upon it the opinions of witnesses regarding it are inadmissible." Lake v. Shenango Furnace Co. 160 Fed. 887.

*Lauder & Lauder* and *Wishek & Wishek,* for respondent.

"Where evidence is the result of voluminous facts, or the inspection of many books and papers, the examination of which cannot conveniently take place in court, or where the witness has inspected the accounts of the parties, though not allowed to give evidence of their particular contents, he will be allowed to speak of the general balance or result of such examination, and such statement is not hearsay." New La Junta & Lamar Canal Co. v. Kreybill (Colo.) 67 Pac. 1026.

"Where the entries in books are numerous and complicated, it is competent to permit an expert bookkeeper who has examined the books to give a summary oral statement of their contents and computation made." Von Sachs v. Kretz, 72 N. Y. 548; McCormick v. Pennsylvania R. R. Co. 49 N. Y. 315. See Elliott, Work of Advocate, 217.

"Where book entries, vouchers or accounts are voluminous or complicated the testimony of a competent witness who has made an examination and summary of them may ordinarily be received in evidence." Haines v. Goodlander (Kan.) 84 Pac. 986.

Nuessle, J. The pertinent matters on this appeal are well stated in the memorandum opinion of the trial judge as follows:

"This action is brought to recover the penalty, $2,000, of a fidelity bond, issued by the defendant to the plaintiffs, covering the fidelity of one George W. Freund, as a grain buyer, in an elevator owned by plaintiffs, at Danzig, N. D. The bond, while being more liberal than some of its kind, covers loss occurring through the larceny or embezzlement of the employe, in the business; and, as the evidence shows conclusively that, if any loss is proved, it resulted from what amounts. in law, to embezzlement, I shall treat the bond as being the usual fidelity bond in such cases.

"The defendant admits the issuance of the bond, and that, after its

issuance Freund bought a large amount of grain. It denies that the plaintiffs suffered any loss from his employment, which is covered by the bond.

"It appears that, while the bond was in force, the elevator in which Freund was employed burned. It and its contents were insured against loss by fire, and the insurance was, finally, paid.

"On the trial, plaintiffs introduced in evidence all the books and records of the owners of the elevator in connection with all the transactions involved. These records showed the following essential facts:

"1. The amount and kind of grain in the elevator when the bonded period commenced.

"2. The amount of storage tickets outstanding at that time.

"3. The amount and kind of grain bought by Freund and paid for by him during that period.

"4. The amount, kinds and value of grain shipped out by Freund, during that period.

"5. The amount of two cars of grain shipped out by Freund in the names of two others, for which the plaintiffs collected the pay.

"6. The amount of grains settled and paid for to plaintiffs, by the insurance companies, on account of the fire.

"As to these things, there seems to be no serious dispute between the parties. The dispute most stressed upon the trial, arises over the competency and sufficiency of the evidence offered by plaintiffs, to prove a 'shortage' of grains, attributable to the grain buyer. To show that, it was necessary for the plaintiffs to show that, when the fire occurred, the buyer did not have in his elevator as much grain as his records showed he had bought and received, over and above what his records showed he had shipped out. · They first proved the kinds and amounts of grains which ought to have been in the elevator, according to the records. They next proved how much had been shipped out, according to the records. They then proved the contents of the two cars shipped in the names of others, for which they were paid. They next proved the amounts of grains paid for by the insurance companies, as having been in the elevator, and having been burned, or damaged so that the companies had to take it over and pay for it.

"They then proved, by the testimony of an expert witness, how much of the grains in the elevator were *actually consumed* by the fire. The

values of the grains, at the time of the fire, was also proved. They also proved the amount of grain damaged and 'salvaged' from the fire.

"They claim that the amount of grains bought, or stored, plus the amount of like grain in the elevator when Freund took it over showed the total amount of grains received by him and for which he was accountable, as buyer.

"They also claimed that the only credits to which the buyer would be entitled (the defendants standing in his shoes in that regard), would be as follows:

"1. Grains shipped out and sold.

"2. The two cars of grain shipped out in other names, but for which plaintiffs were paid.

"3. The grains actually in the elevator at the time of the fire. And, as to this item, it was claimed that the buyer should be credited, first, with the grains actually burned up in the fire; and, second, with the grains salvaged."

The case was tried to the court without a jury. The court found for the plaintiff and ordered judgment accordingly. Judgment was entered on this order. Thereafter the defendant moved the court to vacate and set aside the findings, order for judgment and judgment so entered, and for a new trial. This motion was denied. Thereafter the defendant perfected the instant appeal from the order of the district court and the judgment entered thereon.

On its motion for a new trial and on this appeal the defendant specified numerous errors on which it relies. These touch rulings of the trial court relating to the admission of evidence and challenge the sufficiency of the evidence to sustain the order for judgment as entered in favor of the plaintiff. On this appeal the defendant relies particularly upon the challenge to the sufficiency of the evidence in that there was no legal or sufficient evidence; (1) to show the amount of grain in the elevator at the time Freund took charge on August 1, 1923; (2) to show the amount of grain consumed by the fire; (3) to show that all of the grain consigned to commission firms was all of the grain sold which was accounted for to plaintiffs; (4) to show the amount of grain salvaged from the fire; (5) to show any shortage whatsoever, in that the records relied upon to prove shortage are inadmissible. The proposi-

tions thus raised will be considered and disposed of in the order as above set out.

Among other witnesses called by the plaintiff was one Johnson. Johnson was in charge of the plaintiffs' elevator business and had supervision of the bookkeeping in connection therewith. On August 1st, 1923 he and Miles, who was the manager of the plaintiffs' business, checked Freund into the Danzig elevator. At that time they measured the grain in the elevator. Johnson was experienced in the elevator business. He testifies that from his observation of the grain and from the measurements then made he was able to state approximately the amounts of the various sorts of grain in the elevator. However, no inquiry was made and no proof offered as to the manner in which the measurements were made. When asked to state the amounts of grain in the elevator the defendant objected on the ground that the question called for the opinion and conclusion of the witness; that no foundation for such testimony had been laid in that it was not shown what measurements had been made. The objection was overruled and the witness permitted to answer. From this answer it appears that there was then in the elevator 50 bushels of wheat, 3009 bushels of rye, 11 bushels of flax and 393 bushels of barley. The court at the time that the testimony was admitted stated that the defendant might cross-examine if he so desired in order to ascertain the witness' knowledge regarding the quantity of grain and the manner in which the measurements were made. The defendant however, did not avail itself of the right to cross-examine but was content to rest upon the objection to the introduction of the testimony. Error was predicated upon this ruling of the court.

A witness may give his estimate as to the quantity of a commodity that he has examined if he possesses sufficient knowledge and data on which to ground an estimate and shows this by stating the facts on which his inference is based. 22 C. J. 567. Here Johnson was experienced in the elevator business. He examined the grain. He took measurements, and while those measurements are not detailed, nevertheless that fact does not necessarily render his conclusion as to the amount of the grain inadmissible. Many experienced farmers and grain men can by viewing grain in a bin or in a pile closely approximate the quantity therein. The foundation requisite to a conclusion of

this sort depends upon the circumstances. If a witness can reasonably form a conclusion from the knowledge and information he is shown to possess his conclusion may be admissible, where the pertinent facts upon which such conclusion is based cannot be put before the court or a jury in such a manner as to enable them to form a reasonably accurate judgment themselves. This is the practical rule of necessity. See Jones, Ev. 2d ed. § 1248; 11 R. C. L. pp. 568, et seq. It is difficult in many cases to say where fact leaves off and opinion begins. Practically every statement of fact is the conclusion of him who makes it, based upon his powers of observation—his eyesight, his hearing, or his sense of smell or touch.

It is next contended that there was not sufficient evidence to show the amount of grain consumed by the fire. In order to establish this fact plaintiffs called the witness Cady. Cady was a fire insurance adjuster. His business was to adjust losses on grain elevators. He had had a large experience and had adjusted over one hundred elevator losses. He first saw the ruins left by the fire in the instant case about thirty-six hours after the fire occurred. The grain which was unconsumed was then being salvaged. Cady examined the ruins, saw the grain which remained, saw that which was salvaged, and estimated the amounts thereof. His testimony was that in such fires the percentage of grain destroyed runs from thirty to forty per cent of the whole amount contained in the elevator at the time of the fire. In this case he testified that he was able, from what he had observed and from his knowledge and experience generally, to approximate the amount of grain contained in the elevator at the time of the fire. When inquiry was made as to his estimate regarding such amount objection was interposed on the ground that there was no foundation for his testimony as an expert; that the question called for the opinion and conclusion of the witness, and that the matter under investigation was not a proper subject for expert testimony. These objections were overruled and the witness was permitted to answer.

There was no error in this respect. The witness was experienced in judging losses of this character. As disclosed by his testimony, when a building in which grain is stored is burned the fire forms a crust over the surface of the grain, air is excluded and combustion does not readily take place. Grain is different from most other commodities

which are readily and quickly consumed by fire with only a residue of ashes. The matter was one upon which the ordinary individual without large experience would be unable to form a correct judgment while one with experience might be able to do so, and was a proper subject for expert testimony. Sufficient foundation was laid for the inquiry and the testimony was admissible.

The plaintiffs offered evidence to show the amount of grain consigned by Freund to the various commission firms to whom grain was shipped for disposal. It is contended that the evidence tendered does not sufficiently establish that the grain consigned to the commission firms was all of the grain sold and accounted for by Freund to the plaintiffs; that it deals only with such grain as was shipped by rail and there is no accounting for any that may have been shipped by truck or sold locally.

Now it appears that the grain thus consigned to the commission houses was all which Freund purported or attempted to account for, and if any was sold locally or shipped by truck he failed to account for it. It is immaterial how the grain was disposed of if it was not accounted for. The practice under which the business was carried on required that a report be made by Freund daily, or as often as was necessary, showing the amount of grain received by him, the amount bought, the amount stored, and the amount disposed of. Pursuant to this practice reports were made by him regarding these various items. Freund himself testifies that these reports were correct. The records made up from these reports were kept under the direction of the witness Johnson at Ashley. These reports made by him to the Ashley office were at least admissions against him and were admissible as evidence against the defendant as his surety. See Baird v. National Surety Co. 54 N. D. 91, 209 N. W. 204. It is true that he had records in the elevator at Danzig, but when the elevator burned these were destroyed and all that remained were those in the general office at Ashley.

After the fire the insurance companies having policies on the burned property salvaged such as they could of the unconsumed grain. Grain of the various sorts stored therein, wheat, rye, flax and barley, was commingled. Such as was worth saving and could be saved was shipped to the Brooks Elevator at Minneapolis. The witnesses who attended to the salvaging and shipping testified as to the amount shipped and that

there remained about 200 bushels which was not disposed of in this way. It is true that not all of those who were employed in salvaging the grain testified, but those who were in charge of the operations were called as witnesses. The testimony in this regard is not as full and complete as it might be. Nevertheless, we think that in the absence of any showing to the contrary, and none was made, it was sufficient to warrant the finding of the court with respect thereto.

Finally it is contended that the evidence relied upon to prove the shortage is inadmissible. The records offered and received are in fact all of the records of the transactions which remained after the fire. Now under the practice followed by the plaintiffs and Freund in carrying on the business, Freund made reports daily, or as often as required, to the principal office at Ashley as to the amount of grain received, whether it was bought and paid for by him, or stored, as well as that shipped out of the elevator. When he received grain he issued a scale ticket, made a record thereof, and reported the transaction to the head office. When he stored grain he took up the scale ticket, issued a storage ticket, and likewise made report to the head office. When he paid for such grain as he bought he did so by check. These checks were drawn on the Ashley Bank and when paid were charged to and turned over to the plaintiffs. When he bought grain as it was delivered to the elevator, he took up the scale tickets upon paying for it. When he bought stored grain he took up the storage ticket when he paid for it. These scale and storage tickets were then sent in to the office at Ashley. When grain was disposed of by Freund this also was reported to the head office and when consignments were made to the commission firms the statements of these firms were returned to the office at Ashley. Thus there was a record of and a check on every transaction properly carried through. The plaintiffs produced and offered in evidence the scale tickets, storage tickets, checks, reports by Freund as to purchases, shipments and sales, reports on account of consignments, and all other documents made by Freund pertaining to the business and transmitted to the principal office. All of these records as made by Freund and transmitted to the principal office were identified generally. There were very many of them and identification was only general without segregation and examination of each particular item or instrument. Such records were made and kept in the usual course of the business and as a part of the

system of keeping a record of the transactions to which they related. Both Johnson and Freund testified to their truth and correctness. No evidence was offered to the contrary. Full opportunity to cross-examine was afforded the defendant. The trial court was satisfied that they were genuine. They were admissible over the objection that they had not been properly or sufficiently identified.

Johnson was a skilled bookkeeper. He had been in that business for many years. His experience in bookkeeping covered the elevator business as well as various other businesses. Johnson testified that he had examined the various exhibits last above referred to and that from such examination he was able to make an audit showing the amount of grain received in the elevator by Freund, the amount paid for, the amount held in storage and not paid for, and the amount accounted for. He made such audit in writing. This was identified and offered in evidence. Defendant objected to its admission on the grounds that no foundation had been laid for it and that it was not the best evidence. The objection was overruled and the evidence received.

The rule is that in those cases where it is impracticable or impossible for the court to make an examination of a large number of instruments, entries or records, a competent witness may make such examination and present his conclusions thereon to the court. See Baird v. National Surety Co. supra; Jones, Ev. 2d ed. § 767. We think that the instant case is one where this might well be done.

Considering the record in the light of the objections urged, we think that there was no error on the part of the trial court in the rulings as made. It must be borne in mind that this case, though one at law, was tried to the court without a jury. Where complaint is made on account of the admission of evidence over objection, this court in passing upon the propriety of the trial court's ruling will be much more liberal than it would be had the case been tried to a jury. So also the case is here on this appeal with all the presumptions in favor of the correctness of the trial court's findings. See Baird v. National Surety Company, 54 N. D. 91, 209 N. W. 204; Flath v. Bankers Casualty Co. 49 N. D. 1053, 194 N. W. 739. In most instances the objections urged as against the evidence touch the questions of weight and value rather than of competency. The trial court passed upon these questions and we are

not disposed to disturb his findings. The evidence is sufficient to sustain the findings and judgment.

The judgment is affirmed.

BIRDZELL, Ch. J., and CHRISTIANSON, BURKE, and BURR, JJ., concur.