**INTERSTATE COLLECTION AGENCY, INC., Plaintiff and Appellant,**

v.

**Sebastian KUNTZ, a/k/a Sy Kuntz, Defendant and Respondent.**

Civ. No. 8627.

Supreme Court of North Dakota.

Oct. 30, 1970.

Rehearing Denied Dec. 8, 1970.

Gordon O. Hoberg, Napoleon, for plaintiff and appellant.

Rausch & Chapman, Bismarck, for defendant and respondent.

ERICKSTAD, Judge.

The plaintiff Interstate Collection Agency, Inc., whom we shall hereinafter refer to as the collection agency, appeals from a judgment of the district court, dated December 1, 1969, dismissing its claim against the defendant Sebastian Kuntz, whom we shall hereinafter refer to as the Coffee Cup, as it was under this name that the defendant conducted his business. A trial de novo is demanded in this court.

The basis of this action is the assignment of an account by one Andrew E. Sperle, the former owner and operator of the Red Owl Store at Napoleon, North Dakota, allegedly incurred by Mr. Kuntz for groceries purchased for the operation of the Coffee Cup Cafe in that city. The complaint asserts an indebtedness of $1298.53 due the collection agency, resulting from the assignment by Mr. Sperle of the Cafe's account. The answer is in two parts. First, it denies each and every allegation of the complaint, and second, it as-

serts that the claim was assigned for collection only and that it is therefore champertous and consequently illegal.

The trial court found (1) that the collection agency failed to sustain the burden of proof and (2) that the assignment of the claim was void as champertous.

When the case was tried before the district court, sitting without a jury, the collection agency called Mr. Sperle, the former owner of the grocery store with whom the alleged account was originally incurred, to establish the existence of the account. After considerable difficulty and numerous attempts on the part of counsel for the collection agency to lay a proper foundation for the introduction in evidence of the plaintiff's Exhibits 1, 2, 3 and 4, which allegedly were the books containing the originals and carbon copies of the record of the sales as they were made from day to day by the grocer's employees as the groceries were purchased and charged to the Coffee Cup, the court received the exhibits in evidence.

The most inclusive objection made during the trial to the introduction of the sales books follows:

* * * We object to the offer of the Plaintiff's Exhibits 1, 2, 3, and 4, on the ground and for the reason that there has been no proper foundation laid for the introduction of the exhibits. We submit that these are not business records within the meaning of the statute. All we have here is a number of sales books which are in no way entered into any business record of Mr. Sperle. He has not identified and stated the mode of the preparation of the exhibits. He has not testified that this Exhibit was prepared at or near the time of the act, condition, or event. He has not stated any information to the Court, and no evidence has been submitted to the Court which would justify the conclusion that the method and the time of preparation was such as to bind this defendant.

I call the Court's particular attention to the fact that a very large percentage of the sales slips in this book contain no signature or initials whatsoever. The tie-up with this defendant is absolutely totally lacking except that somebody at some time has written on the top of the book "Coffee Cup." Now, as the Court will see, a large number of the slips have nothing on them and it is impossible at this time to state who received them or for what purpose they were received; there is no way of tying this up with the defendant such that he should be charged with the payment of every item that is found therein. This is the extent of our objection.

Our statute pertinent to this objection reads:

31–08–01. *Admissibility in evidence of business records—Term "business" defined.*—A record of an act, condition, or event shall be competent evidence, in so far as relevant, if:

1. The custodian or other qualified witness testifies to its identity and the mode of its preparation;

2. It was made in the regular course of business, at or near the time of the act, condition, or event; and

3. The sources of information and the method and time of preparation, in the opinion of the court, were such as to justify its admission.

For the purpose of this section, the term "business" shall include every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not.

North Dakota Century Code.

Although the foundation may have been somewhat unartfully laid, we believe that it was sufficient to justify the receipt of the exhibits in evidence and that little benefit would be derived from setting forth herein a detailed analysis of the record relative to that issue. As the defendant did not call

any witnesses to testify or offer any evidence, and as the plaintiff did not call the sales clerks who allegedly made out the charge slips to verify the sales; did not call the employees of the Coffee Cup to verify the purchases; and did not call the defendant for cross-examination under this statute, what we must decide today is the effect that should be given the exhibits under the circumstances. In other words, does the admission of the business records, such as they are in this case, establish a prima-facie case for the plaintiff?

In a decision rendered by this court in 1933, construing our Business Records as Evidence Statute as then contained in Section 7909 of the Compiled Laws of North Dakota 1913, which section was more restrictive than the present section, the court said:

It is true that it is not necessary to produce as witnesses all of the persons who made the entries, nor is it necessary for the accountant, or the one in charge of the bookkeeping department to have made the entries himself, or have seen them made, and it is also true that, if the court is "satisfied that they are genuine and in other respects within the provisions of this section," they may be admitted in evidence. It is said the court was satisfied as to their genuineness, but this is not sufficient. The proof required must be furnished, and from this proof the court must "be satisfied that they are genuine and in other respects within the provision of this section." After this proof is furnished, the court has the discretion of determining whether he will receive them.

In Dr. R. D. Eaton Chemical Co. v. Doherty et al., 31 N.D. 175, 183 et seq., 153 N.W. 966, the rules governing the introduction of books of account are discussed. It is not necessary to reiterate them here. In the recent case of Wishek et al. v. United States Fidelity & Guaranty Company, 55 N.D. 321, 213 N.W. 488, reference is made to the quantum of proof, and in Spies v. Stang, 56 N.D. 674, 677, 218 N.W. 860, 861, the admission of such records was approved when it was shown that they were " 'contemporaneous with the transactions to which they relate, and as a part of or connected with such transactions, made by persons authorized to make the same,' and 'shown to have been so made upon the testimony of the person who made them.' " While in this case cited the testimony was furnished by the person who made the entries, yet it is not necessary always to produce such person.

Baldwin Piano Co. v. Wylie, 63 N.D. 216, 247 N.W. 397, 399, 400 (1933).

Referring to the business records in *Baldwin Piano* the court further said:

* * * While the practice of admitting them has become almost universal, yet they should be subjected to close scrutiny. Dr. R. D. Eaton Chemical Co. v. Doherty et al., supra. Appropriate and complete objection to their reception was made. We may feel the books offered are in fact the books of the company, but more proof of the reliability of these ledger sheets should have been forthcoming. Plaintiffs' records are incomplete and unsatisfactory. Both parties rely largely on defendant's record. If the necessary proof of authenticity can be supplied, we are in position to determine the financial status of the parties in relation to each other.

Baldwin Piano Co. v. Wylie, *supra,* 247 N.W. 400.

The supreme court concluded by remanding the case to the district court for the taking of additional testimony and required that the district court make findings and conclusions upon the additional testimony taken and that it then certify the same to the supreme court.

In an earlier decision, this court quoted from Jones' Commentaries on Evidence as to the significance to be given business records.

In Jones' Commentaries on Evidence, in consideration of the question of the degree of credit to be given to books of account as evidence, it is said:

"The courts have frequently expressed the opinion that evidence of this character is quite unsatisfactory, and that it should be subjected to close scrutiny. It has been said that books of account are received in evidence only upon the presumption that no other proof exists. They are justly regarded as the weakest and most suspicious kind of evidence. The admission of them at all is a violation of one of the first principles of the law of evidence, which is that a party shall not himself make evidence in his own favor. The practice of admitting such evidence is, however, universally adopted. It is said that it had its origin in a kind of 'moral necessity,' and that 'such is the general course of business that no proof could be furnished of the frequent small transactions between men without resorting to the entries which they themselves have made in this form of accounts.' * * * But to make them evidence at all the books must have been kept in a manner so cautious as, in a great degree, to furnish a guaranty against abuse. * * * Books of account of either party, in which charges and entries have been originally made, are admissible in evidence, their credibility to be judged by the jury; but before such books are admissible in evidence they are to be submitted to the inspection of the trial judge, accompanied with proof that the entries therein were made by the party contemporaneous with the transactions therein recorded, in due course of business; and if they exhibit a fair register of the daily business of the party, and appear to have been honestly and regularly kept, they should be submitted in evidence to be considered by the jury. * * * *In most states, by force of statutes or decisions of the courts, books of account, when kept in compliance with the rules above given, and properly verified, are prima facie evidence of the facts therein stated.* The admissibility is, of course, for the court; the weight of the evidence for the jury. It is for them to place the value of the books as evidence according to the appearance of the entries, the manner of the bookkeeping, the general correctness of the charges, and the innumerable and varying circumstances called into existence by the character of the entry and the particular business transaction submitted to them." Section 575, Jones' Commentaries on Evidence. [Emphasis added, and the earlier court's emphasis through italics omitted.]

Dr. R. D. Eaton Chemical Co. v. Doherty, 31 N.D. 175, 153 N.W. 966, 968 (1915).

In the instant case, the district judge, acting as both judge and jury, received the records in evidence, weighed them, and apparently found them insufficient in probative value to establish a prima-facie case.

In Jones' Fifth Edition of the Law of Evidence, as revised by Spencer A. Gard, the development of the Shop Book Rule is explained.

Shop Book Rule.—Antedating by a century or so the development of any common law doctrine to recognize the admissibility of entries in books of account made by a clerk or entrant other than the party himself, the so-called "Shop Book Rule" had become a fixed principle of evidence, though it subsequently yielded to pressures of other rules to the point of near extinction in its original form. Originally the rule was in fact one of necessity arising from the common law incompetency of a party, because of his interest in the result of the suit, to testify on his own behalf. In lieu of his testimony he was accorded the right to introduce his books of account, but, in the United States at least, only upon showing that he had no clerk who could testify.

Another common law development was the companion rule, also involving the

feature of necessity, which made admissible regular book entries by clerks of the parties or by other "third persons" where it is shown that the entrant is dead or, as commonly recognized, otherwise unavailable as a witness. In the case of entries by clerks or third persons the element of necessity arises not from the fact that the entrant is incompetent to testify, as was the case of the shopkeeper himself, but because of his unavailability for other reasons, such as death, insanity, absence from the jurisdiction and the like.

With the removal of the bar against interested parties testifying in their own behalf the reason for the shopbook rule relating to parties' books of account as a separate concept ceased to exist. In most jurisdictions the admissibility of a party's books of account was thereafter brought within the scope of a broader rule of admissibility of entries in due course of business regardless of whether they were made by the party himself or by another. In fact in some jurisdictions there had never been judicial recognition of the rule relating to parties' books of account as a separate branch of the rule relating to regular entries.

But in many states the shop-book rule relating to parties' books of account has continued to be the subject of separate treatment, often statutory.

As considered elsewhere in this work enlightened and consistent modern statutes have in many jurisdictions superseded the common law rules and obsolete statutes, and announced a rule of admissibility for all records made in the regular course of business at or about the time of the act, condition or event recorded, whether or not the entrant or entrants are shown to be dead or otherwise unavailable. The abolishment of the requirement of unavailability meets the practical demands of business and follows the precept of some courts which had held it inexpedient to require the pro-

duction or explain the absence of all employees who had participated in the making of the entries.

3 Jones, Law of Evidence § 610 at 1162, 1163, 1164 (5th Ed. 1958).

In discussing the probative value or weight to be given books of account, it is further said in that edition:

The admissibility of a party's books of account on his own behalf is contrary in principle to the rule that party shall not make self-serving evidence in his own favor. This fact, because of a sentiment that the entries, especially if not supported by the suppletory oath of the party, may be dishonest, has led the courts to say on numerous occasions that books of account are unsatisfactory evidence; and sometimes they have been rejected where evidence thought to be more satisfactory was available.

However, because more convincing proof may be produced, it seems that a proffered book is not to be rejected, the probative value of the entries in the book being properly a matter for the determination of the jury, and not ground for exclusion of the evidence.

3 Jones, Law of Evidence § 618 at 1179 (5th Ed. 1958).

In discussing the Uniform Business Records as Evidence Act, which our State has adopted, the text writers of American Jurisprudence 2d have this to say:

This act abrogates many of the antiquated and technical common-law rules regarding the admission of business records in evidence, and expands the operation of the common-law rule for the admission of such records as an exception to the hearsay rule. It is designed to permit the admission of systematically entered records without the necessity of identifying, locating, and producing as witnesses the individuals who made entries in the records in the regular course of business, rather than to make a fun-

damental change in the established principles of the shopbook exception to the hearsay rule. The purpose of the act has been stated to be to eliminate the necessity of calling, qualifying, and interrogating each person who made the individual entries, and it has also been declared that the act should be liberally construed to effectuate its purpose. It follows that it is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of his work or has supervision of its creation. The basic theory of the uniform law is that records which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, and therefore ought to be received in evidence unless the trial court, after examining them and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence.

The competency of business records under the statute should not, it has been said, turn on whether, in the context of the case, they are self-serving or admissions against interest; such matters affect probative value or credibility and are for the factfinders. However, it has also been noted that the statute does not make business records admissible where other testimony of the same facts would be inadmissible. The admissibility of business records or entries under the act is specifically limited to those which are relevant. The act does not make relevant that which is not in fact relevant nor does it make all business records competent evidence regardless of the manner in which, and the purpose for which, they were made. In other words, the statute does not change the rules of competency or relevancy or make a record admissible when oral testimony to the same effect would not be admissible, but merely provides a method of proof of an admissible act, condition, or event.

30 Am.Jur.2d Evidence § 933 at 53, 54 (1967).

The writers further discuss the act as follows:

The Uniform Business Records as Evidence Act, which has been enacted into law by the legislatures in more than half of the states, specifically makes a business record competent evidence, so far as relevant, "if the custodian or other qualified witness testifies to its identity and the mode of its preparation." Thus, business records, to be admissible under this act, must first of all be properly authenticated. The statute leaves considerable discretion to the trial court, however, with regard to the qualifications of the witness, the sources of his information, and the sufficiency of the identification. It is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of his work, or who has supervision of its creation. * * *
*    *    *    *    *    *

The above principles have been applied to various types of papers and records made in the regular course of business, including, among others, bank deposit slips; bills of lading; delivery tags and slips; invoices; receipts; sales slips and sheets; summary sheets; and time cards, slips, and sheets.

30 Am.Jur.2d Evidence § 950 (1967).

See especially Boland v. Dehn (Mo. App.) 348 S.W.2d 603 (1961) and Oil Field Operating Co. v. Eureka Tool Co., 181 Okl. 393, 74 P.2d 377 (1937), involving the admissibility of sales and shop tickets.

■ ■ From all of this we conclude that our statute, being the Uniform Business Records as Evidence Act, is much more liberal in permitting the use of

records as evidence than was the original Shop Book Rule or the rule at common law as to entries in books of account. Consistent with the legislative intent to broaden the use of business records as evidence we believe it proper to give such records, when received in evidence and when unrebutted by the opposing party, prima-facie effect. See J. R. Watkins Company v. Vangen, 116 N.W.2d 641 at 650 (N.D.1962), wherein this court reaffirmed its view that the intent of the Uniform Act was to enlarge the operation of the business records exception to the Hearsay Evidence Rule.

The second issue raised in this appeal is whether the assignment from the grocer to the collection agency is champertous and therefore illegal.

The main authority relied on by the defendant in support of his contention that the assignment is champertous is that of Stark County v. Mischel, 42 N.D. 332, 173 N.W. 817 (1919). He also refers the court to Section 9–11–08, the pertinent part of which reads:

> *Definitions.*—As used in section 9–11–09, the following words or phrases shall have the meaning hereinafter set forth:
> \*      \*      \*      \*      \*      \*
>
> 2. "Assignor" means any person, firm or corporation who or which, by written instrument, assigns an account receivable for a past or present valuable consideration, by way of sale, pledge or otherwise, \* \* \*
> \*      \*      \*      \*      \*      \*

North Dakota Century Code.

The holding in *Stark County* is based more on the statutory duties of a state's attorney and on the standard of ethics of an attorney generally than on the law of champerty. See the special concurrences of Judges Birdzell and Christianson, wherein they refused to find that the assumption of the costs in conjunction with a contingent fee made the contract there under consideration champertous.

We find the reference to Subsection 2 of Section 9–11–08, N.D.C.C., of little aid to us in determining the issue here under consideration.

The plaintiff contends that this issue was settled by the decision of Rohan v. Johnson, 33 N.D. 179, 156 N.W. 936 (1916). Without discussing this issue in great detail, we conclude that the plaintiff is correct.

We think parts of what Justice Christianson said in *Rohan,* in 1916, would be even more true today.

> The original reasons for the protest against champertous contracts no longer exist. See discussion of this subject in Greenleaf v. Minneapolis, St.P. & S.Ste. M.R.Co., 30 N.D. 112, 125, 151 N.W. 879; Brown v. Bigne, 21 Or. 260, 28 Pac. 11, 14 L.R.A. 745, 28 Am.St.Rep. 752; Gilman v. Jones, 87 Ala. 691, 5 South. 785, 7 South. 48, 4 L.R.A. 113; 5 R.C.L. 271; 6 Cyc. 852 et seq. As the peculiar conditions of society which gave rise to the doctrine do not exist in this country, the tendency of the courts is strongly in direction of relaxation of the common-law doctrine. The United States Supreme Court has held that attorneys may lawfully contract with their clients to prosecute claims against the United States and receive as compensation therefor, conditioned upon their success, an agreed amount or percentage of the sum recovered. Re Paschal, 10 Wall. (77 U.S.) 483, 19 L.Ed. 992; McPherson v. Cox, 96 U.S. 404, 417, 24 L.Ed. 746, 750; Central R.R. Co. v. Pettus, 113 U.S. 116, 5 Sup.Ct. 387, 28 L.Ed. 915. And although an agreement for contingent fees for professional services may contain provisions rendering it invalid in whole or in part, still the mere fact that the compensation for such professional services is fixed in a certain

amount or percentage of the amount recovered, and conditioned upon the success of the litigation, does not render such agreement champertous. The propriety, and even necessity, of such agreements under modern conditions have been recognized by both bench and bar, as well as by the people's law-making representatives, and their validity is sustained by the great weight of modern authority. * * *

\* \* \* \* \* \*

No good purpose would be accomplished by quoting any of the numerous definitions of champerty found in the books. While the authorities differ as to all the ingredients essential to constitute champerty, they seem agreed that the gist of the offense is the malicious or officious intermeddling in a suit in which the intermeddler has no interest. * * *

\* \* \* \* \* \*

The law recognizes the fact that the services of nonprofessional agents may be desirable or necessary in collecting or enforcing claims. See 6 Cyc. 865. Mercantile and commercial agencies are recognized establishments in, and collection agencies are by no means strangers to, the modern conditions of business and commerce, and the practice of collecting claims upon a commission or percentage basis of the amount collected is too well known to require elucidation. * * *

Rohan v. Johnson, 33 N.D. 179, 156 N.W. 936 (1916).

■ The court in *Rohan* concluded by saying that the agreement set forth in that case was merely to collect, compromise or settle a promissory note in consideration of a certain percentage of the amount collected or recovered and that such agreement was not per se void either on the ground of champerty or public policy.

At this late date, some fifty-four years since *Rohan*, we do not believe it wise to retreat to the more restrictive meanings of champerty.

■ We conclude by remanding this case to the trial court for a determination of the amount due the plaintiff from examination of the records received in evidence under our Uniform Business Records as Evidence Act. Since the trial court was of the impression that the records could be received and, although unrebutted, could then be ignored, it did not attempt to ascertain the amount due and owing under the evidence submitted. Although this court could, under a trial de novo, attempt to ascertain the exact amount due and owing, we think that it is better that the trial court first attempt this function, as ours is basically an appellate court and the district court is basically, and especially in this case, a trial court.

The judgment of the district court is therefore reversed and the case is remanded.

PAULSON, STRUTZ and KNUDSON, JJ., concur.

TEIGEN, Chief Justice.

I concur in the result that the judgment must be reversed. However, I feel that this court is not performing its duty under the statute when it remands the case to the trial court for a determination of the amount due. The court has not ordered a new trial. It merely directs the trial court to find the amount due from the evidence already of record and before us on this appeal. The appeal was taken under Section 28–27–32, N.D.C.C., and the appellant has specified in its statement that it desires a review of the entire case. All of the evidence and proceedings are embodied in the statement. Therefore, under the statute, this court shall try anew the questions of fact in the entire case and, pursuant to the statute, "shall finally dispose of the same whenever justice can be done without a

new trial, and shall either affirm or modify the judgment or direct a new judgment to be entered in the district court." Although the majority admit that this court could, under a trial de novo, ascertain the amount due, they do not do so because, as they state, "we think that it is better that the trial court first attempt this function, as ours is basically an appellate court and the district court is basically, and especially in this case, a trial court." Under this procedure, it would appear that after the trial court has found the amount due, if either party is aggrieved, another appeal may be taken to this court. This makes for piecemeal decisions, contrary to the intent and clear language of Section 28–27–32, N.D.C.C. I adhere to my dissent in Simon v. Woodland, 179 N.W.2d 422 (N.D. 1970). I believe that we have a duty under the trial de novo statute to finally dispose of these cases whenever justice can be done without a new trial. This is such a case.